No. 3–09–0260

Filed March 23, 2010

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | | |
|---|---|---|
| CLARK INVESTMENTS, INC., an | ) | Appeal from the Circuit Court |
| Illinois Corporation, d/b/a R and R RV Sales, | ) | of the 21st Judicial Circuit, |
| | ) | Iroquois County, Illinois |
| Plaintiff-Appellant, | ) | |
| | ) | No.  06-L-17 |
| v. | ) | |
| | ) | |
| AIRSTREAM, INC., a Nevada Corporation, | ) | Honorable |
| | ) | Susan S. Tungate, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE CARTER delivered the opinion of the court:

Plaintiff, Clark Investments, Inc., d/b/a R&R RV Sales (R&R), filed a complaint seeking money damages against defendant, Airstream, Inc. (Airstream), alleging that Airstream had violated the Illinois Motor Vehicle Franchise Act (815 ILCS 710/1 et seq. (West 2008)) (Franchise Act) and the Illinois Franchise Disclosure Act (815 ILCS 705/1 et seq. (West 2008)) (Disclosure Act) in its business dealings with R&R.  Airstream filed a motion for summary judgment as to both statutory claims, and the trial court granted the motion.  R&R appeals, arguing that the trial court erred in granting summary judgment for Airstream on R&R's Franchise Act claim.  We affirm the trial court's ruling.

FACTS

The material facts involved in this case are not in dispute.  Airstream, a Nevada corporation, was a manufacturer of recreational vehicles (RVs), including motor homes, vans, and trailers.  R&R

was a dealer that sold RVs and was located in Illinois in Iroquois County. In May of 2000, Airstream and R&R entered into a contract (the first contract), which authorized R&R to sell one of Airstream's products. Of relevance to this appeal the first contract provided that: (1) R&R would be allowed to sell Airstream's Class A motor homes (the largest and most expensive type of motor homes)[1]; (2) R&R would have the State of Illinois as its exclusive sales territory; (3) R&R would maintain certain inventory requirements; (4) R&R would have as its sales goals to sell 8 units the first year and 12 units the second year; and (5) the first contract would expire on July 31, 2002.[2]

In July of 2002, about two weeks before the first contract was due to expire, Airstream sent R&R a replacement contract (the second contract). For the most part, the second contract was similar to the first. However, there were some noteworthy changes. The second contract provided that: (1) the agreement would not have an expiration date and would continue until the parties ended their relationship; (2) no sales goals were listed for R&R; and (3) no exclusive sales territory was listed for R&R. R&R did not accept the second contract as it was written. Rather, R&R made some changes to the second contract, signed it, and forwarded it to Airstream for approval. Most notably, R&R added language to the second contract to again give it the State of Illinois as its exclusive sales territory. Airstream rejected the changes that R&R had made and notified R&R by letter that it generally did not agree to such a large territorial provision. Due to the exclusion of any defined

---

[1]The contract described the product as, "LAND YACHT MOTORHOME [sic] (GAS & DIESEL)." Deposition testimony, however, established that the vehicles in question were Class A motor homes and that they were the largest and most expensive motor homes.

[2]Most of the important specific information was actually listed in a dealer data sheet, which was attached to and incorporated by reference into the contract.

exclusive sales territory, R&R refused to sign the second contract.

The first contract expired by its own terms at the end of July of 2002. From that point until March of 2003, there was no written agreement between Airstream and R&R. However, R&R continued to sell Airstream products and Airstream continued to provide R&R with the same support as it had under the first contract. During that period, the parties continued negotiating in an attempt to reach an agreement.

In March of 2003, faced with the possibility of losing its ability to sell Airstream products, R&R entered into an new written contract (the third contract) with Airstream. The third contract was backdated to August of 2002. As with the second contract, for the most part, the provisions of the third contract were similar to the provisions of the first contract. However, the following provisions were changed: (1) the provision in the third contract listing R&R's exclusive sales territory was left blank so that the third contract did not provide R&R with an exclusive sales territory; (2) R&R's inventory requirements were reduced; (3) no sales goals were listed for R&R; and (4) R&R was allowed to sell an additional Airstream product, trailers. Although the third contract did not specifically provide as such, at some point, R&R was also allowed to sell a third type of Airstream product, vans (Class B motor homes).

At some point thereafter prior to July of 2006, R&R learned that Airstream had entered into an agreement with another dealer to locate an Airstream franchise in Bolingbrook, Illinois, about 90 miles from R&R's franchise location. Pursuant to its contract with Airstream, the Bolingbrook dealer was authorized to sell Airstream trailers and vans but not Airstream Class A motor homes. R&R subsequently filed the instant complaint seeking money damages, including treble damages, "pursuant to section 13 of the [Franchise] Act." Section 13 of the Franchise Act allows "[a]ny franchisee or

3

motor vehicle dealer who suffers any loss of money or property, real or personal, as a result of the use or employment by a manufacturer, wholesaler, distributor, *** or any agent, servant or employee thereof, of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by this Act, or any action in violation of this Act," to "bring an action for damages and equitable relief, including injunctive relief, in the circuit court of the county in which the objecting franchisee has its principal place of business or, if the parties have so agreed, in arbitration." 810 ILCS 710/13 (West 2008).; Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325, 343, 770 N.E.2d 177, 189 (2002). Under section 13 of the Franchise Act if the violator's misconduct is willful or wanton, treble damages may be awarded. 815 ILCS 710/13 (West 2008). Airstream filed a motion for summary judgment. R&R filed a response opposing summary judgment, and Airstream filed a reply to that response.

Attached to the summary judgment pleadings were various depositions, affidavits, and financial documents (the supporting documents). In addition to the above factual information, the supporting documents established that: (1) the sale goals listed for R&R in the first contract were not requirements and were, in fact, nothing more than goals; (2) during the first contract, R&R did not meet its sales goals, did not keep the required amount of inventory, and, at one point, had a problem with its financing; (3) R&R did not suffer any damage as result of the changes in sales goals or inventory from the first contract to the third contract; and (4) R&R benefitted from its ability to sell additional types of Airstream products and its sales of Airstream products went significantly higher as a result thereof.

A hearing was held on Airstream's motion for summary judgment. After hearing the arguments of the attorneys, the trial court took the matter under advisement. The trial court later

issued a written ruling granting summary judgment for Airstream as to R&R's Franchise Act claim and as to R&R's Disclosure Act claim. R&R appealed the grant of summary judgment, but only as to its Franchise Act claim.

ANALYSIS

On appeal, R&R argues that the trial court erred in granting summary judgment for Airstream on R&R's Franchise Act claim. R&R asserts that proper application of the Franchise Act, as well as the existence of substantial issues of material fact, should have prevented the entry of summary judgement for Airstream. Airstream argues that the trial court's ruling was proper and should be affirmed. Airstream asserts that since the undisputed facts showed that Airstream did not violate the Franchise Act, Airstream was entitled to a grant of summary judgment.

The purpose of summary judgment is not to try a question of fact, but to determine if one exists. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 42-43, 809 N.E.2d 1248, 1256 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008); Adams, 211 Ill. 2d at 43, 809 N.E.2d at 1256. A trial court's grant of summary judgment is subject to de novo review on appeal. Adams, 211 Ill. 2d at 43, 809 N.E.2d at 1256. The construction of a statute is an appropriate matter for summary judgment and is also subject to a de novo standard of review on appeal. See Village of Chatham v. County of Sangamon, 216 Ill. 2d 402, 433, 837 N.E.2d 29, 47-48 (2005).

In support of its argument, R&R asserts first that Airstream violated section 4(e)(8) of the Franchise Act when it located another dealer within R&R's relevant market area. Section 4(e)(8) of

5

the Franchise Act prohibits a manufacturer from granting "an additional franchise in the relevant market area of an existing franchise of the same line make" or from relocating "an existing motor vehicle dealership within or into a relevant market area of an existing franchise of the same line make" without providing the required statutory notice to the existing franchise so that the existing franchise has an opportunity to file a protest before the proposed change takes place. See 815 ILCS 710/4(e)(8) (West 2008). For a franchise located in a county with a population of less than 300,000 persons, "relevant market area" is defined in the Franchise Act as "the area within a radius of 15 miles from the principal location of said franchise or dealership; or the area of responsibility as defined in the franchise agreement, whichever is greater." 815 ILCS 710/2(q) (West 2006).[3]

In the present case, the third contract contained no exclusive sales territory listed for R&R. Thus, under the statute, R&R's relevant market area was limited to a 15 mile radius around its principal location in Iroquois County. See 815 ILCS 710/2(q) (West 2006). Airstream's location of a new franchise within the State of Illinois, but approximately 90 miles away, clearly did not violate the statute. Although R&R asserts that the third contract was void, that assertion, even if true, does not advance its position. A finding that the third contract was void would not in any way bring back the first contract, wherein R&R had a relevant market area of the State of Illinois. The first contract expired by its own terms and would not somehow be reenacted by a finding that the third contract was void. Thus, we must reject this particular assertion by R&R on this issue.

As its next assertion in support of its argument, R&R asserts that Airstream violated section 4(d)(6) of the Franchise Act when it refused to extend the first contract, wherein R&R had an

---

[3]In 2007, this section of the statute was amended and the language, "or the area of responsibility as defined in the franchise agreement, whichever is greater," was removed.

6

exclusive sales territory of the State of Illinois.  Section 4(d)(6) of the Franchise Act prohibits a manufacturer from doing any of the following three things without statutorily defined good cause and notice:

> (1) "to cancel or terminate the franchise or selling agreement of a motor vehicle dealer";
>
> (2) "to fail or refuse to extend the franchise or selling agreement of a motor vehicle dealer upon its expiration"; or
>
> (3) "to offer a renewal, replacement or succeeding franchise or selling agreement containing terms and provisions the effect of which is to substantially change or modify the sales and service obligations or capital requirements of the motor vehicle dealer."  815 ILCS 710/4(d)(6) (West 2008).

In determining the meaning of a statute, the primary rule is to ascertain and give effect to the intent of the legislature.  Town & Country Utilities, Inc. v. Illinois Pollution Control Board, 225 Ill. 2d 103, 117, 866 N.E.2d 227, 235 (2007).  The most reliable indicator of that intent is the language of the statute itself.  Town & Country Utilities, Inc., 225 Ill. 2d at 117, 866 N.E.2d at 235.  If the statutory language is clear and unambiguous, it must applied as written, without resorting to further aids of statutory construction.  Town & Country Utilities, Inc., 225 Ill. 2d at 117, 866 N.E.2d at 235; A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent.  Town & Country Utilities, Inc., 225 Ill. 2d at 117, 866 N.E.2d at 235.

In the present case, the statute is clear and unambiguous.  Contrary to R&R's assertion, the

statute provides three categories of conduct that are prohibited. Airstream's conduct in the instant case falls under the third category because it offered R&R a replacement agreement and did not merely allow R&R's first contract to expire. Thus, we cannot agree with R&R's assertion that Airstream violated the statute, under the second category, by failing to extend the first contract. R&R's assertion in that regard simply does not comport with the facts of this case.

Moreover, Airstream's conduct under the third category did not violate the statute because Airstream did not "substantially change or modify the sales and service obligations or capital requirements" of R&R. Again, the statutory language as to this category is clear and unambiguous. The statute prohibits only certain types of conduct, none of which Airstream is guilty of in this case. R&R contends that such an interpretation is inconsistent with the intent of the statute–to protect motor vehicle dealers and consumers from the negative impact of aggressive franchising practices by motor vehicle manufacturers. See 815 ILCS 710/1.1 (West 2008); General Motors Corp. v. State Motor Vehicle Review Board, 224 Ill. 2d 1, 7, 862 N.E.2d 209, 215-16 (2007). However, where the plain language of the statute is clear and unambiguous, we cannot read exceptions or conditions into the statute that the legislature did not express. See Town & Country Utilities, Inc., 225 Ill. 2d at 117, 866 N.E.2d at 235; Kunkel v. Walton, 179 Ill. 2d 519, 533-34, 689 N.E.2d 1047, 1053-54 (1997). Nor can we find in this case, that any of the changes in the agreement between the parties as expressed in the contracts served to substantially change or increase R&R's service obligations or capital requirements. Thus, R&R cannot prevail on their assertion here. The trial court properly granted summary judgment for Airstream on R&R's Franchise Act claim.

For the foregoing reasons, we affirm the judgment of the circuit court of Iroquois County.

Affirmed.

8

SCHMIDT, J. concurring.

Filed March 23, 2010 **CORRECTION**

Clark Investments, Inc. v. Airstream, Inc., No. 3--09--0260

PRESIDING JUSTICE HOLDRIDGE, dissenting:

I would remand this matter to the circuit court with instruction that the cause be dismissed for lack of jurisdiction over the subject matter. Subject matter jurisdiction cannot be waived, conferred by stipulation, or consented to by the parties. City of Marseilles v. Radke, 287 Ill. App. 3d 757, 761 (1997). Subject matter jurisdiction can be raised any time, even on appeal, and may be raised by a court of review sua sponte. Jones v. Industrial Comm'n, 335 Ill. App. 3d 340, 343 (2002).

Here, plaintiff, Clark Investments, Inc., filed a complaint in the circuit court of Iroquois County alleging that defendant, Airstream, Inc., violated sections 4(d)(6) and 4(e)(8) of the Illinois Motor Vehicle Franchise Act (Franchise Act) (815 ILCS 710/1 et seq. (West 2008)). Section 4(d)(6) of the Franchise Act prohibits a manufacturer from doing any of the following three acts without proper notice:

(1) "to cancel or terminate the franchise or selling agreement

of a motor vehicle dealer without good cause";

(2) "to fail or refuse to extend the franchise or selling

agreement of a motor vehicle dealer upon its expiration without good

cause"; or

(3) "to offer a renewal, replacement or succeeding franchise or

selling agreement containing terms and provisions the effect of which

is to substantially change or modify the sales and service obligations

9

or capital requirements of the motor vehicle dealer arbitrarily and without good cause." 815 ILCS 710/4(d)(6) (West 2008).

Section 4(d)(6) further provides that the manufacturer's proposed changes will be subject to review for good cause by the Illinois Motor Vehicle Review Board (Review Board). See 815 ILCS 710/4(d)(6)(B), (d)(6)(C) (West 2008). Likewise, section 4(e)(8) prohibits a manufacturer from granting "an additional franchise in the relevant market area of an existing franchise of the same line make" or from relocating "an existing motor vehicle dealership within or into a relevant market area of an existing franchise of the same line make" without providing the required statutory notice to the existing franchise. 815 ILCS 710/4(e) (West 2008). The purpose of these prohibitions is to allow the existing franchise to challenge the proposed changes before the Review Board, at which time the manufacturer would be required to establish good cause for the proposed changes. See 815 ILCS 710/4(e)(8) (West 2008).

Moreover, disputes between a manufacturer and a franchisee regarding compliance with the Franchise Act are adjudicated pursuant to section 12 of the Franchise Act, which provides that the franchiser and franchisee must agree to submit a dispute involving section 4, 5, 6, 7, 9, 10.1 or 11 of the Franchise Act to arbitration or to the Review Board. 815 ILCS 710/12(a), (b) (West 2008). More specifically, section 12(e) of the Franchise Act limits direct action in the circuit court as follows:

"(e) If the franchiser and the franchisee have not agreed to submit a dispute to arbitration, and the dispute did <u>not</u> arise under paragraph (6) of subsection (d) or paragraph (6), (8), (10), or (11) of subsection (e) of Section 4 of this Act, then a proceeding for a remedy other than damages may be commenced by the objecting franchisee in

10

the circuit court of the county in which the objecting franchisee has its principal place of business, within 60 days of the date the franchisee received notice in writing by the franchiser of its determination under any provision of this Act <u>other</u> than paragraph (6) of subsection (d) or paragraph (6), (8), (10), or (11) of subsection (e) of Section 4 of this Act." (Emphasis added.) 815 ILCS 710/12(e) (West 2008).

The Franchise Act clearly provides that disputes involving section 4 of the Franchise Act "may" be submitted to arbitration under section 12(a) or otherwise "shall" be commenced by the Review Board under section 12(b). More specifically, only disputes under the Franchise Act not involving sections 4(d)(6) or 4(e)(8) may be commenced in the circuit court. Moreover, sections 4(d)(6) and 4(e)(8) both specifically mention the Review Board as the forum for adjudication of disputes involving those specific sections of the Franchise Act.

The majority maintains that section 13 of the Franchise Act (815 ICLS 710/13 (West 2008)) permits a franchisee to file a complaint in circuit court seeking money damages for any violation of the Franchise Act. In support of the proposition that the circuit court has jurisdiction over any claims for damages under the Franchise Act, the majority cites <u>Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.</u>, 199 Ill. 2d 325 (2002). I would find that neither section 13 nor <u>Belleville Toyota</u> supports the holding that a franchisee can bypass the Review Board and raise alleged violations of sections 4(d)(6) and 4(e)(8) in an action for damages in the circuit court.[4]

---

[4] Although <u>Belleville Toyota</u> was decided by our supreme court in 2002, the litigation

The Franchise Act underwent extensive revision in 1995 after our supreme court declared former sections 4(e)(8) and 12(c) (815 ILCS 710/4(e)(8), 12(c) (West 1992)), which left good-cause determinations to the trial court, unconstitutional violations of the doctrine of separation of powers. Fields Jeep-Eagle, Inc. v. Chrysler Corp., 163 Ill. 2d 462, 473 (1994); Yakubinis v. Yamaha Mortor Corp., 365 Ill. App. 3d 128, 132 (2006). The new statute, which became effective July 14, 1995, created the Review Board and gave it jurisdiction to determine whether good cause existed under amended section 4(e)(8) of the Franchise Act. Yakubinis, 365 Ill. App. 3d at 132-33; General Motors Corp. v. Motor Vehicle Review Board, 361 Ill. App. 3d 271, 277 (2005). Likewise, the good-faith determination required under section 4(d)(6) was given to the Review Board under the revised statute. Yakubinis, 365 Ill. App. 3d at 139; Ford Motor Co. v. Motor Vehicle Review Board, 338 Ill. App. 3d 880, 889 (2003).

The majority points out that section 13 of the Franchise Act appears to provide for direct access to the circuit court for a franchisee seeking monetary damages for any "unfair method of competition or an unfair or deceptive act or practice declared unlawful by this Act, or any action in violation of this Act." 815 ILCS 710/13 (West 2008). However, to allow a cause of action in the circuit court where the court would have to address the question of good cause under sections 4(d)(6) and 4(e)(8) would ignore the purpose of the 1995 amendments, which created the Review Board. I would further note that section 13 was also amended in 2002, when the following provision was added:

_____

began with the franchisee filing a complaint in the circuit court in 1989 and the matter was resolved under the pre-1995 statute. Thus, it did not involve a question of the Review Board's jurisdiction. See Belleville Toyota, 199 Ill. 2d at 330.

12

"The changes to this Section made by this amendatory Act of the 92[nd] General Assembly (i) apply only to causes of action accruing on or after its effective date and (ii) are intended only to provide an additional venue for dispute resolution without changing any substantive rights under this Act." Pub. Act 92-0272, eff. January 1, 2002 (amending 815 ILCS 710/13).

The 1995 amendments provided that allegations of violations of sections 4(d)(6) and 4(e)(8) would be resolved by a new venue (the Review Board). Claims for damages or injunctive relief would have to wait until the Review Board had made a determination that sections 4(d)(6) and 4(e)(8) had been violated. If a court were to determine that a violation of these sections had occurred, it would be infringing upon the jurisdiction of the Review Board.

Here, plaintiff's complaint sought relief from defendant's alleged violations of sections 4(d)(6) and 4(e)(8) of the Franchise Act. Clearly, the circuit court lacked subject matter jurisdiction over the claims at issue as the matter should have either been submitted to arbitration or commenced by the Review Board. The Franchise Act provides for jurisdiction over the instant dispute only by submission to arbitration or commencement before the Review Board, with administrative review only by the circuit courts of Sangamon or Cook County. See General Motors Corp. v. Motor Vehicle Review Board, 224 Ill. 2d 1, 19 (2007).

Because the Iroquois County circuit court lacked subject matter jurisdiction, its order granting summary judgment to defendants was void. The matter should be remanded to the circuit court with direction to dismiss the complaint for lack of subject matter jurisdiction.

13