Filed 11/23/10          NO. 4-10-0204

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

CROSSROADS FORD TRUCK SALES, INC.,      )    Appeal from
          Plaintiff-Appellant,          )    Circuit Court of
          v.                            )    Sangamon County
STERLING TRUCK CORPORATION; DAIMLER     )    No. 09L60
TRUCKS NORTH AMERICA, LLC, d/b/a        )
FREIGHTLINER TRUCKS and WESTERN STAR;   )    Honorable
and CHRIS PATTERSON,                    )    Patrick W. Kelley,
          Defendants-Appellees.         )    Judge Presiding.
_____

          JUSTICE TURNER delivered the opinion of the court:

          In October 2009, plaintiff, Crossroads Ford Truck

Sales, Inc. (Crossroads), filed a second-amended complaint

against defendants, Sterling Truck Corporation (Sterling),

Daimler Trucks North America, LLC (Daimler Trucks), and Chris

Patterson.  In December 2009, defendants filed a motion to

dismiss.  In February 2010, the circuit court granted the motion

to dismiss in part.

          On appeal, Crossroads argues the circuit court erred in

dismissing portions of its second-amended complaint.  We affirm.

I. BACKGROUND

          Daimler Trucks is a Delaware limited-liability company

and a wholly owned subsidiary of Daimler AG.  Daimler Trucks is

the largest heavy-duty truck manufacturer in North America and

manufactures various brands of trucks including Freightliner,

Western Star, and Sterling.  Sterling is a Delaware corporation

licensed to do business in Illinois and a wholly owned subsidiary

of Daimler Trucks.  Chris Patterson is the chief executive

officer of Daimler Trucks and president of Sterling.  Detroit Diesel Corporation (Detroit Diesel) is a subsidiary of Daimler AG and engaged in the business of manufacturing engines and parts installed in Sterling, Freightliner, and Western Star trucks.

Crossroads is a motor vehicle dealer and has been a Sterling dealer since 1998.  Sterling and Crossroads entered into a sales and service agreement on August 20, 2005.  Under the agreement, Crossroads was granted the right to purchase Sterling trucks and vehicle parts.  Sterling "reserve[d] the right to discontinue at any time the manufacture or sale of any or all Sterling Trucks Products or to change the design or specification for Sterling Trucks Products without prior notice to [Cross-roads]."  The agreement was to continue in effect until December 31, 2009.

In February 2009, Crossroads filed a complaint against defendants, alleging, inter alia, violations of the Motor Vehicle Franchise Act (Franchise Act) (815 ILCS 710/1 through 32 (West 2008)), fraud, and tortious interference with contract.  In April 2009, defendants filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-615 (West 2008)).  In June 2009, the circuit court ordered the complaint stricken and granted Crossroads 30 days to file an amended complaint.

In July 2009, Crossroads filed a first-amended complaint setting forth the same or similar issues.  In August 2009, defendants filed a section 2-615 motion to dismiss.  In September

2009, the circuit court granted the motion in part and allowed Crossroads to file a second-amended complaint.

In October 2009, Crossroads filed a 14-count second-amended complaint against defendants. In count I, Crossroads alleged Sterling violated various sections of the Franchise Act. Crossroads alleged Patterson notified it in an October 14, 2008, letter that Daimler Trucks was announcing a "two brand strategy" with the discontinuation of production of Sterling trucks. The letter to Sterling dealers stated, in part, as follows:

> "The Sterling Trucks Brand and product line will be discontinued due to overlap with offerings in the other [Daimler Trucks] product lines and low market penetration. Dealers may continue to accept orders for new Sterling Trucks until January 15, 2009[,] with requested delivery no later than Friday[,] March 31, 2009. The last day of production will be March 26, 2009.

> The Sterling dealer network will continue to perform warranty repairs and maintenance, and continue to supply parts and technical support to Sterling customers."

To continue as a Sterling service-only dealership, the letter set forth a transition program that provided, in part, as follows:

> "[Daimler Trucks] will offer you the opportunity to continue on as a Sterling

service dealership under a new Sterling Ser-

vice Dealer Agreement.  This new Service

Dealer Agreement will replace the existing

Sterling Dealer Sales and Service Agreement.

As part of the transition process you will

receive a formal notice of termination of

your Sales and Service Agreement in the com-

ing weeks.

As an added incentive to stay with

Daimler Trucks as a service dealer, and in

recognition of your past commitment, Sterling

is offering substantial transition payments

to those current Sterling dealers who sign on

to become authorized Sterling Service Deal-

ers."

If Crossroads accepted the offer to participate in the transition

bonus program, it was required to sign a release of liability.

Daimler Trucks offered Crossroads $203,000 as a transition bonus.

If Crossroads chose not to participate in the transi-

tion bonus program and thereby not continue as a service dealer,

it would be offered repurchase assistance.  The letter also

provided as follows:

"Following termination of the Sales and

Service Agreement, if you do not otherwise

sell new OEM product with Detroit Diesel

engines, you will not be entitled to a re-

newal of your Detroit Diesel Direct Dealer Agreement, which is currently set to expire on December 31, 2008."

Also on October 24, 2008, Daimler Trucks filed an announcement with the Securities and Exchange Commission noting the discontinuation of the Sterling trucks product line.

"The Sterling Trucks brand will be discontinued effective in March 2009. Additions to the Freightliner and Western Star product ranges will be made to address market segments that have been served exclusively by Sterling offers in the [Daimler Trucks] stable."

On November 24, 2008, Daimler Trucks sent the following letter to Crossroads:

"As stated in the October 14, 2008[,] communications, this letter is your formal notice that [Sterling] is exercising its rights pursuant to [s]ection IX.B of your Sterling Trucks Dealer Sales and Service Agreement (the 'Dealer Agreement') to discontinue the manufacture of Sterling Truck vehicles.

As we have previously communicated, [Sterling] will continue to manufacture new Sterling vehicles until March 2009 and we

expect the last day to place an order for a new Sterling Truck to be built will be January 15, 2009.  However, Sterling trucks will continue to be marketed and sold for so long as new Sterling vehicles are available.

You have been provided an opportunity to transition from your Dealer Agreement to a new Service Agreement.  In the event you do not accept this opportunity, your current Sales and Service Agreement remains in effect.

This notice does not constitute a notice of termination or modification of your Dealer Agreement, because you may elect to continue operating under your current Dealer Agreement.

While we believe no formal notice is required under your state's dealer laws, if you feel otherwise, please consider this that notice.  Likewise no notice is required to be sent to your state's licensing department, but they have also been copied on this letter to ensure total communication."

Crossroads alleged the October and November 2008 letters amounted to a constructive notice of impending termination or nonrenewal of its franchise "at an unspecified date in

the future when Crossroads would be unable to acquire new Sterling trucks." Crossroads alleged this violated the Franchise Act, including section 4(b) (815 ILCS 710/4(b) (West 2008)), because Sterling's conduct was in bad faith and caused damages; section 4(d)(6) (815 ILCS 710/4(d)(6) (West 2008)), because Sterling caused the termination or nonrenewal of the franchise without good cause; section 4(d)(1) (815 ILCS 710/4(d)(1) (West 2008)), because Sterling arbitrarily or capriciously modified the plan of allocation of new Sterling trucks to Crossroads causing it damages; section 4(d)(6)(A) (815 ILCS 710/4(d)(6)(A) (West 2008)), because Sterling without good cause failed to provide Crossroads with statutory notice of termination or nonrenewal; and section 9 (815 ILCS 710/9 (West 2008)), because Sterling has terminated or failed to renew the franchise without paying fair and reasonable compensation to Crossroads for the value of the business and franchise.

Count II alleged Daimler Trucks violated various sections of the Franchise Act, including sections 4(b), 4(d)(6), 4(d)(1), 4(d)(6)(A), and 9. Count III alleged Patterson violated section 4(d)(6) of the Franchise Act for terminating the franchise without good cause.

Count IV alleged Daimler Trucks violated section 4(b) of the Franchise Act by intentionally requiring Crossroads to invest in Sterling products at a time when Daimler Trucks personnel knew it planned to discontinue the manufacture of new Sterling-type trucks under the Sterling brand.

Count V alleged Daimler Trucks tortiously interfered with Crossroads' business relationship with Sterling.  Crossroads alleged its franchise and section 4(d)(6) of the Franchise Act created a reasonable expectation of a continuing valid business relationship between it and Sterling that would not be terminated absent good cause.  Count V alleged the October 2008 letter interfered with and caused the termination and/or nonrenewal of the franchise with Sterling without good cause resulting in damages to Crossroads through the loss of the franchise and loss of business and reputation.

Count VI alleged Daimler Trucks violated sections 4(d)(6), 4(b), and 4(d)(4) of the Franchise Act as a result of the nonrenewal of Crossroads' Detroit Diesel direct dealer agreement.  Crossroads alleged the dealer agreement allowed it to purchase parts needed in the warranty work and nonwarranty repair and maintenance of Sterling trucks.  On April 1, 2009, Daimler Trucks sent the following letter to Crossroads:

"Your Detroit Diesel Corporation ('DDC') Direct Dealer Agreement, originally dated effective January 1, 2005[,] and subsequently extended expired on December 31, 2008.  Since that time, DDC has filled orders for DDC products, and has honored DDC warranty claims for all Sterling dealers, including those who did not accept the Sterling Transition Bonus program.

- 8 -

This letter will give notice that as of April 10, 2009, DDC will not accept any further orders, will cancel all pending orders, and will not accept any claims for warranty reimbursement for work performed after that date."

Crossroads alleged Daimler Trucks unlawfully caused the dealer agreement between Detroit Diesel and Crossroads not to be renewed as a result of Crossroads' refusal to sign the transition bonus program and general release.

Count VII alleged Sterling's discontinuation of the availability of new Sterling vehicles to Crossroads under the sales and service agreement constituted a termination of its franchise without good cause and amounted to a material breach entitling it to damages.

Count VIII alleged Sterling made a proposal to Crossroads on June 23, 2009, seeking to extend the termination date of the sales and service agreement to December 31, 2012. Crossroads alleged the proposal is an offer to substantially change and modify the obligations of the sales and service agreement in violations of sections 4(d)(6), 4(d)(6)(B), and 9 of the Franchise Act. Count IX set forth a similar claim that Daimler Trucks unlawfully modified the sales and service agreement in violation of the Franchise Act.

Count X alleged Sterling violated the amended version of section 4(d)(6)(D) of the Franchise Act that took effect on

May 22, 2009. 815 ILCS 710/4(d)(6)(D) (West Supp. 2009). Crossroads alleged it purchased approximately 12 new Sterling trucks after May 22, 2009, and sold "most" of them. Sterling maintained that Crossroads' franchise has not been terminated, but Crossroads claims Sterling's new truck inventory will be depleted and it will be unable to sell new trucks and the franchise will come to an end. Crossroads alleged the franchise had been terminated and not renewed without good cause in violation of sections 4(d)(6), 4(b), 4(d)(1), 4(d)(6)(A), and 9 of the Franchise Act. Count XI set forth a similar claim against Daimler Trucks.

Count XII alleged in the alternative that, if termination or nonrenewal of the franchise after May 22, 2009, was with good cause, then it was in violation of amended section 9.5 of the Franchise Act (815 ILCS 710/9.5 (West Supp. 2009)). Crossroads alleged Sterling would terminate or fail to renew the franchise on terms equally available to other dealers without paying fair and reasonable compensation to Crossroads for the value of its business and franchise. Count XIII set forth a similar claim against Daimler Trucks.

Count XIV alleged Daimler Trucks violated section 6 of the Franchise Act (815 ILCS 710/6 (West 2008)) by causing the termination and/or nonrenewal of Crossroads' dealer agreement with Detroit Diesel that prevented it from purchasing parts to perform warranty work on Sterling trucks. Crossroads alleged the nonrenewal of the dealer agreement was without any valid business

reason and was designed to "economically punish" it in retaliation for its refusal to sign the transition bonus program and general release.

In December 2009, defendants filed a section 2-615 motion to dismiss the second-amended complaint. In February 2010, the circuit court entered its order dismissing 12 of the 14 counts. In dismissing counts I, II, VIII, and IX with prejudice, the court found that even if Crossroads adequately alleged an actual or constructive termination of the contract, such termination would be with good cause under section 4(d)(6)(D) of the Franchise Act. The court found both the "discontinuance and rebranding would be good cause for terminating the contract." The court also dismissed with prejudice counts III, IV, V, VII, X, XI, XII, and XIII. The court denied the motion to dismiss as to counts VI and XIV, finding Crossroads alleged facts showing Daimler Trucks had a direct interest in the Detroit Diesel contract and that contract is covered by section 8 of the Franchise Act. 815 ILCS 710/8 (West 2008).

In its order, the circuit court found no just reason to delay the appeal. 210 Ill. 2d R. 304(a). In March 2010, Crossroads filed its notice of interlocutory appeal.

II. ANALYSIS

A. Subject-Matter Jurisdiction

Before responding to Crossroads' argument on appeal as to the circuit court's partial dismissal of the second-amended complaint, defendants argue the circuit court and this court as

well lack subject-matter jurisdiction over the claims founded under section 4(d)(6) of the Franchise Act (815 ILCS 710/4(d)(6) (West 2008)). The issue of subject-matter jurisdiction cannot be waived and may be raised at any time. <u>Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.</u>, 199 Ill. 2d 325, 333-34, 770 N.E.2d 177, 184 (2002).

Section 4(d)(6) of the Franchise Act prohibits a manufacturer from doing any of the following three acts without proper notice:

> "[(1)] to cancel or terminate the fran-
> chise or selling agreement of a motor vehicle
> dealer without good cause ***; [(2)] to fail
> or refuse to extend the franchise or selling
> agreement of a motor vehicle dealer upon its
> expiration without good cause ***; or [(3)]
> to offer a renewal, replacement or succeeding
> franchise or selling agreement containing
> terms and provisions the effect of which is
> to substantially change or modify the sales
> and service obligations or capital require-
> ments of the motor vehicle dealer arbitrarily
> and without good cause." 815 ILCS
> 710/4(d)(6) (West 2008).

Section 4(d)(6) also provides that the manufacturer's proposed changes will be subject to review for good cause by the Motor Vehicle Review Board (Review Board). 815 ILCS 710/4(d)(6)(B),

- 12 -

(4)(d)(6)(C) (West 2008).  The manufacturer has the burden of proof before the Review Board to establish good cause.  815 ILCS 710/4(d)(6)(C) (West 2008).

In Clark Investments, Inc. v. Airstream, Inc., 399 Ill. App. 3d 209, 213-14, 926 N.E.2d 408, 412-13 (2010), the Third District reviewed the circuit court's grant of summary judgment on sections 4(e)(8) and 4(d)(6) of the Franchise Act.  The majority considered the section 4(d)(6) claim and found the plaintiff could not prevail on the facts.  Clark Investments, 399 Ill. App. 3d at 214-15, 926 N.E.2d at 412-13.

In dissent, Presiding Justice Holdridge argued the cause should have been dismissed for lack of jurisdiction over the subject matter.  Clark Investments, 399 Ill. App. 3d at 215, 926 N.E.2d at 413 (Holdridge, P.J., dissenting).  The dissent noted disputes between a manufacturer and a franchisee over matters involving the Franchise Act are adjudicated under section 12, "which provides that the franchiser and franchisee must agree to submit a dispute involving section 4, 5, 6, 7, 9, 10.1 or 11 of the Franchise Act to arbitration or to the Review Board." Clark Investments, 399 Ill. App. 3d at 216, 926 N.E.2d at 414 (Holdridge, P.J., dissenting), citing 815 ILCS 710/12(a), (b) (West 2008).  Section 12(e) limits direct action to the circuit court, in part, as follows:

"If the franchiser and the franchisee have not agreed to submit a dispute to arbitration, and the dispute did not arise under

- 13 -

paragraph (6) of subsection (d) or paragraph (6), (8), (10), or (11) of subsection (e) of [s]ection 4 of this Act, then a proceeding for a remedy other than damages may be commenced by the objecting franchisee in the circuit court of the county in which the objecting franchisee has its principal place of business, within 60 days of the date the franchisee received notice in writing by the franchiser of its determination under any provision of this Act other than paragraph (6) of subsection (d) or paragraph (6), (8), (10), or (11) of subsection (e) of [s]ection 4 of this Act." (Emphasis added.) 815 ILCS 710/12(e) (West 2008).

Presiding Justice Holdridge noted "[t]he Franchise Act clearly provides that disputes involving section 4 of the Franchise Act 'may' be submitted to arbitration under section 12(a) or otherwise 'shall' be commenced by the Review Board under section 12(b)." Clark Investments, 399 Ill. App. 3d at 216, 926 N.E.2d at 414 (Holdridge, P.J., dissenting). He also noted "only disputes under the Franchise Act not involving section 4(d)(6) or 4(e)(8) may be commenced in the circuit court" and those two sections specifically state the Review Board is the forum for adjudicating disputes under those sections. Clark Investments, 399 Ill. App. 3d at 216-17, 926 N.E.2d at 414-15 (Holdridge,

- 14 -

P.J., dissenting).

Crossroads argues section 13 of the Franchise Act (815 ILCS 710/13 (West 2008)) allows a dealer to file any action in the circuit court, including an action for damages under section 4(d)(6). Presiding Justice Holdridge noted "[t]he Franchise Act underwent extensive revision in 1995 after our supreme court declared former sections 4(e)(8) and 12(c) (815 ILCS 710/4(e)(8), 12(c) (West 1992)), which left good-cause determinations to the [circuit] court, unconstitutional violations of the doctrine of separation of powers." Clark Investments, 399 Ill. App. 3d at 217, 926 N.E.2d at 415 (Holdridge, P.J., dissenting), citing Fields Jeep-Eagle, Inc. v. Chrysler Corp., 163 Ill. 2d 462, 479, 645 N.E.2d 946, 954 (1994). Under the new statute, the Review Board was created and given the jurisdiction to determine good-cause issues under section 4(e)(8) and good-faith claims under section 4(d)(6). Clark Investments, 399 Ill. App. 3d at 217, 926 N.E.2d at 415 (Holdridge, P.J., dissenting).

While noting the majority's belief that section 13 of the Franchise Act appeared to provide direct access to the circuit court for a franchisee seeking monetary damages, Presiding Justice Holdridge contended that "to allow a cause of action in the circuit court where the court would have to address the question of good cause under sections 4(d)(6) and 4(e)(8) would ignore the purpose of the 1995 amendments, which created the Review Board." Clark Investments, 399 Ill. App. 3d at 217-18, 926 N.E.2d at 415 (Holdridge, P.J., dissenting).

- 15 -

"The 1995 amendments provided that allegations of violations of sections 4(d)(6) and 4(e)(8) would be resolved by a new venue (the Review Board). Claims for damages or injunctive relief would have to wait until the Review Board had made a determination that sections 4(d)(6) and 4(e)(8) had been violated. If a court were to determine that a violation of these sections had occurred, it would be infringing upon the jurisdiction of the Review Board." Clark Investments, 399 Ill. App. 3d at 218, 926 N.E.2d at 416 (Holdridge, P.J., dissenting).

See also Fields Jeep-Eagle, 163 Ill. 2d at 477, 645 N.E.2d at 953 (finding "[t]he independent determination of what facts are pertinent and the assessment of those facts as they bear upon whether a business should be allowed to operate at a given location are not functions which courts are generally equipped to perform or with which they should be burdened"). Presiding Justice Holdridge believed the circuit court lacked subject-matter jurisdiction over the claims involving sections 4(d)(6) and 4(e)(8) and the matter should have been one for arbitration or the Review Board. Clark Investments, 399 Ill. App. 3d at 218, 926 N.E.2d at 416 (Holdridge, P.J., dissenting).

We agree with the reasoning in Presiding Justice Holdridge's dissent. Issues as to whether good cause existed to

cancel or terminate a franchise or the refusal to extend the franchise are matters best left to the arbitrator or the Review Board under section 12(d) of the Franchise Act (815 ILCS 710/12(d) (West 2008)) and not the judiciary.  See Fields Jeep-Eagle, 163 Ill. 2d at 478-79, 645 N.E.2d at 954.

        In the case sub judice, Crossroads filed a protest before the Review Board but voluntarily dismissed it.  As the circuit court did not have subject-matter jurisdiction over the section 4(d)(6) claims, the portions of the order dealing with those respective claims in the second-amended complaint are void and will not be addressed in this appeal.

B. Section 2-615 Motion To Dismiss

        A motion to dismiss under section 2-615 of the Procedure Code challenges only the legal sufficiency of the complaint. Pickel v. Springfield Stallions, Inc., 398 Ill. App. 3d 1063, 1066, 926 N.E.2d 877, 881 (2010).  In ruling on a section 2-615 motion to dismiss, the question is "whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted."  Canel v. Topinka, 212 Ill. 2d 311, 317, 818 N.E.2d 311, 317 (2004).  The trial court should not grant the motion to dismiss "unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief." Tedrick v. Community Resource Center, Inc., 235 Ill. 2d 155, 161, 920 N.E.2d 220, 223 (2009).  We review an order granting a section 2-615 motion to dismiss de novo.  Beacham v. Walker, 231

Ill. 2d 51, 57, 896 N.E.2d 327, 331 (2008).

### 1. Counts I and II

Crossroads argues the circuit court erred in dismissing counts I (Sterling) and II (Daimler Trucks) because rebranding is actionable under section 4(d)(6) of the Franchise Act. In its brief, Crossroads contends rebranding of vehicles does not qualify as "good cause" for terminating or failing to renew a franchise under section 4(d)(6)(D). However, this issue is not properly before us because of the lack of subject-matter jurisdiction. Therefore, we will not address it.

Crossroads also argues count I states a valid claim under section 4(d)(1) of the Franchise Act (815 ILCS 710/4(d)(1) (West 2008)), which makes it a violation for a manufacturer or officer or agent thereof "to adopt, change, establish or implement a plan or system for the allocation and distribution of new motor vehicles to motor vehicle dealers which is arbitrary or capricious or to modify an existing plan so as to cause the same to be arbitrary or capricious." In support of its argument, Crossroads simply states section 4(d)(1) does not have a good-cause element and thus count I stated a valid claim.

In looking at count I, Crossroads alleged Sterling violated section 4(d)(1) because it arbitrarily and capriciously modified the previously existing plan of allocation of new Sterling trucks to Crossroads. Crossroads alleged the

> "two brand strategy *** changed, established
> or implemented a system for the allocation

and distribution of Sterling[-]type trucks that were previously labeled under both the Sterling brand and either Freightliner or Western Star brands and caused the Sterling[-]type trucks to be manufactured and labeled only as Freightliner or Western Star brands in the future without allocating any such trucks to Crossroads."

To survive a section 2-615 motion to dismiss, the plaintiff "must allege specific facts supporting each element of the cause of the action, and 'the court will not admit conclusions of law and conclusory allegations not supported by specific facts.'" Callaghan v. Village of Clarendon Hills, 401 Ill. App. 3d 287, 300, 929 N.E.2d 61, 75 (2010), quoting Visvardis v. Eric P. Ferleger, P.C., 375 Ill. App. 3d 719, 724, 873 N.E.2d 436, 441 (2007).

Here, Crossroads' conclusory allegations in count I that Sterling violated section 4(d)(1) by arbitrarily and capriciously modifying the plan of allocating vehicles fail to state a cause of action. Crossroads' nearly identical allegations on section 4(d)(1) against Daimler Trucks in count II also fail to state a cause of action. Because Crossroads does not set forth an argument pertaining to section 9 under these two counts, we will not address whether the allegations in the second-amended complaint state a cause of action under that section.

- 19 -

## 2. Count III

Crossroads argues the circuit court erred in dismissing count III against Chris Patterson, the chief executive officer of Daimler Trucks and president of Sterling. Crossroads claimed he was liable for terminating its franchise without good cause in violation of section 4(d)(6) of the Franchise Act. Because we have no subject-matter jurisdiction over the section 4(d)(6) claim here, we will not address it.

## 3. Counts VIII and IX

Crossroads argues counts VIII (Sterling) and IX (Daimler Trucks) alleged a section 4(d)(6) violation based on defendants' June 23, 2009, e-mail offer to renew its franchise for an additional three years with the modification that Crossroads would not be able to sell trucks. Because we have no subject-matter jurisdiction over the section 4(d)(6) claim here, we will not address it.

Crossroads also argues counts VIII and IX alleged a violation of section 9 of the Franchise Act (815 ILCS 710/9(a) (West 2008)), which states as follows:

> "Anything to the contrary notwithstanding, it shall be unlawful for the manufacturer, wholesaler, distributor or franchiser without good cause, to fail to renew a franchise on terms then equally available to all its motor vehicle dealers, or to terminate a franchise or restrict the transfer of a fran-

chise until the franchisee shall receive fair and reasonable compensation for the value of the business and business premises."

"Illinois is a fact-pleading jurisdiction, and a plaintiff must allege facts sufficient to bring his claim within the cause of action asserted. [Citation.] Conclusions of fact or law unsupported by any allegation of specific facts on which these conclusions rest are insufficient to withstand a motion to dismiss." Kaczka v. Retirement Board of the Policemen's Annuity & Benefit Fund, 398 Ill. App. 3d 702, 707, 923 N.E.2d 1282, 1287 (2010).

In count VIII of its second-amended complaint, Crossroads alleged Sterling failed to renew its franchise on terms equally available to other Sterling dealers because those dealers have Detroit Diesel direct dealer agreements without paying it fair and reasonable compensation. In count IX, Crossroads alleged Daimler Trucks failed to renew its franchise on terms equally available to Daimler Trucks, Freightliner, and Western Star dealers without paying it fair and reasonable compensation.

The allegations in counts VIII and IX are nothing more than conclusions without specific facts in support. The exhibits mentioned in Crossroads' brief on this issue fail to shine a light on the conclusory allegations. Thus, Crossroads failed to

state a cause of action under section 9 of the Franchise Act in counts VIII and IX.

### 4. Counts X and XI

Crossroads argues counts X (Sterling) and XI (Daimler Trucks) stated a valid cause of action under the recent amendments to the Franchise Act. Counts X and XI alleged a section 4(d)(6) termination occurring after May 22, 2009. Effective May 22, 2009, the General Assembly repealed the following language in section 4(d)(6)(D):

> "Good cause shall exist to cancel, terminate, or fail to offer a renewal or replacement franchise or selling agreement to all franchisees of a line make if the manufacturer permanently discontinues the manufacture or assembly of motor vehicles of such line make." 815 ILCS 710/4(d)(6)(D) (West 2008) (repealed by Pub. Act 96-11, §5, eff. May 22, 2009 (2009 Ill. Legis. Serv. 118, 122 (West))).

Crossroads argues since the good-cause language in section 4(d)(6)(D) was repealed May 22, 2009, the termination of the franchise after May 22, 2009, was without good cause under that section. Because we have no subject-matter jurisdiction over the section 4(d)(6) claim here, and since Crossroads does not argue the change in the Franchise Act somehow grants us jurisdiction, we will not address it. The remaining allegations

on sections previously addressed also fail to state a cause of action.

### 5. Counts XII and XIII

Counts XII (Sterling) and XIII (Daimler Trucks) alleged the termination or nonrenewal of the franchise occurring after May 22, 2009, even with good cause, entitled Crossroads to damages under section 9.5(a) of the Franchise Act (815 ILCS 710/9.5(a) (West Supp. 2009)). Section 9.5(a) provides, in part, as follows:

> "Anything to the contrary notwithstanding, if a manufacturer, wholesaler, distributor, or franchiser, with good cause, (i) fails to renew a franchise on terms then equally available to all of its motor vehicle dealers, (ii) terminates a franchise, or (iii) restricts the transfer of a franchise, the manufacturer, wholesaler, distributor or franchiser shall pay to the franchisee all of the following ***." 815 ILCS 710/9.5(a) (West Supp. 2009).

Crossroads alleged it purchased 12 new Sterling trucks after May 22, 2009, pursuant to the terms of the sales and service agreement with Sterling. Crossroads claimed its franchise would terminate when it runs out of Sterling trucks and is unable to purchase new trucks. In the alternative, Crossroads alleged the termination or nonrenewal would not be on terms

equally available to other dealers.

We find Crossroads has failed to state a cause of action under section 9.5. The sales and service agreement remains in effect and has not been terminated, and Sterling offered an extension of the agreement until December 31, 2012. Crossroads' alternative claim that the future termination or failure to renew will not be on terms equally available to other dealers is conclusory in nature and does not state sufficient facts to state a cause of action.

## 6. Count IV

Crossroads argues count IV against Daimler Trucks stated a valid claim for a violation of section 4(b) of the Franchise Act and fraud in the inducement. Section 4(b) states as follows:

> "It shall be deemed a violation for any manufacturer, factory branch, factory repre- sentative, distributor or wholesaler, dis- tributor branch, distributor representative or motor vehicle dealer to engage in any action with respect to a franchise which is arbitrary, in bad faith or unconscionable and which causes damage to any of the parties or to the public." 815 ILCS 710/4(b) (West 2008).

In count IV, Crossroads alleged Daimler Trucks, prior to October 14, 2008, caused it to invest money in Sterling

products when at the time Patterson and others intentionally failed to disclose the material fact that Daimler Trucks would be discontinuing the manufacture of trucks under the Sterling brand. Crossroads alleged the June 24, 2008, annual operating-requirements addendum contractually obligated it to purchase an inventory of Sterling vehicles, parts, tools, and equipment. Count IV alleged Daimler Trucks' conduct was arbitrary and in bad faith and in violation of section 4(b) of the Franchise Act.

> "In order to state a cause of action for fraud, the plaintiff must establish the misrepresentation of a material fact which was made for the purpose of inducing the other party to act; that the party making the statement knew or believed it to be false; that the party to whom the statement was made had a right to rely upon it and did so; and that reliance led to the party's injury." Penzell v. Taylor, 219 Ill. App. 3d 680, 686, 579 N.E.2d 956, 960 (1991).

In count IV, Crossroads failed to allege a misrepresentation of a present fact on the part of defendants that induced it to act. Instead, Crossroads alleged Daimler Trucks failed to disclose it was planning to cease the manufacture of Sterling-brand trucks. However, "[t]here is no duty to speak absent a fiduciary or other legal relationship between the parties." Neptuno Treuhand-Und Ver-wal-tungs-gesell-schaft MBH v. Arbor,

295 Ill. App. 3d 567, 573, 692 N.E.2d 812, 817 (1998). Cross-roads did not allege a fiduciary or other legal relationship existed between it and defendants. Crossroads failed to state a cause of action based on fraud.

Crossroads also failed to state a cause of action under section 4(b) of the Franchise Act. Crossroads alleged Daimler Trucks' conduct was arbitrary and in bad faith. However, given that defendants told Crossroads the sales and service agreement would continue, it cannot be arbitrary or an act of bad faith to require Crossroads to comply with its contractual obligations.

### 7. Count V

Crossroads argues count V against Daimler Trucks states a valid claim of tortious interference with contract. Count V alleged Daimler Trucks tortiously interfered with Crossroads' business relationship with Sterling causing Sterling to breach the franchise contract by terminating or not renewing the franchise without good cause in violation of section 4(d)(6) of the Franchise Act. Because we have no subject-matter jurisdiction over the section 4(d)(6) claim here, we will not address it.

### 8. Count VII

Crossroads argues its breach-of-contract claim against Sterling in count VII should be reinstated. Count VII alleged the failure to manufacture and produce new motor vehicles amounted to a termination of its franchise without good cause in violation of section 4(d)(6) of the Franchise Act. Because we have no subject-matter jurisdiction over the section 4(d)(6)

claim here, we will not address it.

### III. CONCLUSION

For the reasons stated, we affirm the circuit court's judgment.

Affirmed.

KNECHT and APPLETON, JJ., concur.