(Nos. 66361, 66964, 66981, 67050 cons.—

THE BOARD OF EDUCATION OF WARREN TOWN-
SHIP HIGH SCHOOL DISTRICT 121, Appellee, v.
WARREN TOWNSHIP HIGH SCHOOL FEDERA-
TION OF TEACHERS, LOCAL 504, IFT/AFL-CIO,
*et al.*, Appellants.

*Opinion filed March 29, 1989.—Rehearing*
*denied May 26, 1989.*

Mildred F. Haggerty, of Haggerty & Koenig, of Chicago, for appellant Warren Township High School Federation of Teachers.

Neil F. Hartigan, Attorney General, of Springfield (Shawn Denney and Robert Ruiz, Solicitors General, Grace Allen Newton and Marita C. Sullivan, Assistant Attorneys General, and Randi Hammer Abramsky, all of

Chicago, of counsel), for appellant Illinois Educational Labor Relations Board.

Dennis A. Brebner and Thomas A. Robinson, of Robinson, Brebner & Moga, of Lake Bluff, for appellee.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for *amicus curiae* Prairie State College Federation of Teachers.

Gregory J. Malovance, of Winston & Strawn, of Chicago, for *amicus curiae* Illinois Education Association-NEA.

Mark E. Jones and David S. Allen, of Jones, Ware & Grenard, of Chicago, for *amicus curiae* Board of Trustees of Community College District No. 508.

JUSTICE CLARK delivered the opinion of the court:

In the case of *Board of Education v. Compton* (1988), 123 Ill. 2d 216, we held that the Illinois Educational Labor Relations Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 1701 *et seq.*) divests the circuit courts of jurisdiction to vacate or enforce arbitration awards in the context of public educational labor disputes. This case raises the question of whether circuit courts retain the power to enjoin such arbitration. We answer this question in the negative.

In the circuit court of Lake County, appellee, the board of education of Warren Township High School District 121 (the School District), sought declaratory and injunctive relief against appellants, Warren Township High School Federation of Teachers, Local 504, IFT/AFL-CIO (the Union), and the Illinois Educational Labor Relations Board (the Board). The circuit court issued a preliminary injunction enjoining the Union from arbitrating the grievance of Ms. Judith Frank, a nontenured teacher who had been dismissed by the School District. It also

preliminarily enjoined the Board from conducting a hearing to determine whether the School District's refusal to submit Ms. Frank's grievance to arbitration constituted an unfair labor practice. In the cases which are now designated by docket numbers 66361 and 66964, the Union and the Board each appealed the grant of the preliminary injunctions to the appellate court. The appellate court consolidated the two appeals and affirmed. (162 Ill. App. 3d 676.) We granted the appellants' petitions for leave to appeal (107 Ill. 2d R. 315(a)) and again consolidated the two cases. In the meantime, the circuit court issued final injunctions against each of the appellants. In the cases which are now numbered 66981 and 67050, respectively, the Union and the Board moved for direct appeals from the circuit court's final injunctive orders (107 Ill. 2d R. 302(b)). We granted each motion and consolidated all four cases. The board of trustees of Community College District No. 508 was granted leave to file an *amicus curiae* brief in support of the School District. Leave was also granted to the Illinois Education Association-NEA and the Prairie State College Federation of Teachers, Local 3816, IFT-AFT, AFL-CIO, to file *amicus curiae* briefs in support of the Board and the Union.

The facts of the case are not in dispute. During the school years 1984-85 and 1985-86, the School District employed Ms. Judith Frank as a nontenured teacher, with probationary status. In April 1986 the School District's superintendent of schools notified Ms. Frank that she would not be rehired for the 1986-87 school year and that her termination would become effective in June 1986.

The Union, the duly recognized bargaining unit for teachers in District 121, then filed a grievance on Ms. Frank's behalf. The grievance alleged that Ms. Frank's discharge violated article V, sections A6 through A9, of the collective-bargaining agreement in effect for the

years 1985-88. Article V, sections A6 through A9, establishes certain procedures for the evaluation of probationary teachers.

After the School District denied the grievance, the Union filed a demand for binding arbitration with the American Arbitration Association in June 1986, pursuant to article IX of the collective-bargaining agreement, and requested that Ms. Frank be restored to her former position. On February 2, 1987, the School District notified the Union that it would not submit to binding arbitration because it believed that the subject matter of the grievance concerned a discretionary, nondelegable power belonging to the School District under the Illinois School Code (Ill. Rev. Stat. 1987, ch. 122, par. 1—1 et seq.) and was, therefore, inarbitrable. On February 13, 1987, the Union filed an unfair labor practice charge with the Board based on the School District's refusal to submit to arbitration. After investigating the claim, the Board issued a complaint and set the matter for hearing on June 4, 1987.

On February 25, 1987, the School District filed a complaint in the circuit court, seeking a declaratory judgment that the grievance was inarbitrable and a preliminary injunction to prevent the Union from arbitrating the grievance. It later filed an amended complaint seeking to enjoin the Board from conducting its hearing. On June 3, 1987, the circuit court issued the preliminary injunction. The order enjoined the Union and Ms. Frank from proceeding with arbitration and also enjoined the Board from proceeding on the unfair labor practice hearing until the circuit court could decide the merits of the Union's claim.

On appeal, the appellate court affirmed the trial court's orders, holding that the Act does not divest the circuit courts of their traditional power to decide whether a particular grievance is arbitrable. (162 Ill.

App. 3d at 681-82.) The court based its decision on the absence of express language in the Act divesting the circuit courts of their jurisdiction over questions of arbitrability. (162 Ill. App. 3d at 681.) The court also assumed, based upon its holding in *Board of Education v. Rockford Education Association* (1986), 150 Ill. App. 3d 198, that unlawful refusals to arbitrate and attempts to arbitrate inarbitrable questions were not unfair labor practices falling within the purview of the Board. (162 Ill. App. 3d at 680-81.) As a result, the court concluded that the circuit courts retained their jurisdiction under the Act to decide the arbitrability of disputes arising from collective-bargaining agreements. (162 Ill. App. 3d at 681-82.) The court declined to reach the ultimate question of whether the dispute was arbitrable. 162 Ill. App. 3d at 682.

On April 28, 1988, after the appellate court decision and after we had granted the Union's petition for leave to appeal, the circuit court issued a final order, enjoining the Union from proceeding with arbitration and the Board from proceeding upon the unfair labor practice complaint. Citing the appellate court decisions in this case and *Rockford Education Association*, the circuit court held that it had jurisdiction to determine whether the dispute was arbitrable. It also held that, pursuant to the School Code, the School District had nondelegable authority over probationary teachers and, therefore, the dispute over Ms. Frank's dismissal was inarbitrable. Shortly after the circuit court's decision, we granted the Board's petition for leave to appeal from the decision of the appellate court. We then granted the motions of the Union and the Board for direct appeal of the circuit court's order, and all four cases were consolidated. No question has been raised here of whether the circuit court had jurisdiction to permanently enjoin the Union

and Board after this court granted the Union's petition for leave to appeal the decision of the appellate court.

Our analysis in this case is largely controlled by our opinion in *Board of Education v. Compton* (1988), 123 Ill. 2d 216, a case decided while this appeal was pending. *Compton* also involved a dispute over the arbitrability of a grievance concerning a nontenured teacher. In *Compton*, however, the school district allowed the grievance to be arbitrated, lost the arbitration, and then petitioned the circuit court to vacate the arbitration award. (123 Ill. 2d at 218.) We held that the Act "divests the circuit courts of jurisdiction to vacate or enforce arbitration awards in public education." 123 Ill. 2d at 217.

Our holding in *Compton* was based upon several factors. We first noted that the Act is comprehensive in nature, creates rights and duties unknown at common law, and vests jurisdiction over unfair labor practices in the Board. (123 Ill. 2d at 220-21.) We then rejected the assumptions of the appellate court in *Board of Trustees v. Cook County College Teachers Union, Local No. 1600* (1985), 139 Ill. App. 3d 617, and *Board of Education v. Rockford Education Association* (1986), 150 Ill. App. 3d 198, "that a union attempt to arbitrate an inarbitrable grievance would not be an unfair labor practice." (123 Ill. 2d at 224.) We also explained that "whether a certain matter involves 'inherent managerial policy,' and is not, therefore, a mandatory subject of bargaining, is to be determined not by the parties but by the statute, as interpreted in the first instance by the Board." (123 Ill. 2d at 223.) We further observed that unlike the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1987, ch. 48, par. 1601 *et seq.*), the Act does not:

"explicitly provide[ ] for enforcement of arbitration awards in accordance with the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, pars. 101 through 123). Under the Uniform Arbitration Act, all proceedings to com-

pel arbitration, to stay arbitration, to seek vacation of an award or to enforce an award are through the circuit court. (Ill. Rev. Stat. 1985, ch. 10, pars. 102, 112, 114, 116.) The absence of any reference to the Uniform Arbitration Act in the Illinois Educational Labor Relations Act strongly suggests that the legislature did not intend review of arbitration awards by the circuit court, even as to 'arbitrability.' " (123 Ill. 2d at 222.)

Finally, we agreed with the Board that vesting dual jurisdiction over arbitration awards in the Board and the circuit courts would invite "[c]onflicting judgments and forum shopping" which would "imperil the uniformity which the Act obviously seeks to achieve." 123 Ill. 2d at 222.

From what we have already said, it is clear that the reasoning of the appellate court decision in this case has been severely undercut by our decision in *Compton*. In particular, *Compton* rejected the argument that the Act does not divest the circuit courts of jurisdiction to determine the arbitrability of particular disputes in public education labor relations and rejected the assumption that unlawful refusals to comply with arbitration or attempts to arbitrate inarbitrable questions are not unfair labor practices falling within the purview of the Board. Thus the crucial question in this case is whether *Compton* is distinguishable. Do the circuit courts retain the power to enjoin arbitration even though they lack the power to vacate or enforce arbitration awards?

The School District attempts to distinguish *Compton* by arguing that *Compton* was based on the doctrines of primary jurisdiction and exhaustion of remedies. The doctrine of primary jurisdiction provides that where "a court has jurisdiction over a matter, it should in some instances stay the judicial proceedings pending referral of the controversy, or a portion of it, to an administrative agency having expertise in the area." (*Kellerman v. MCI*

*Telecommunications Corp.* (1986), 112 Ill. 2d 428, 444.) Under the doctrine of exhaustion of remedies, a party must first pursue administrative remedies before seeking judicial review. (*Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358.) The School Board then claims that certain exceptions to the two doctrines apply here that were not applicable in *Compton.*

The problem with this argument is that *Compton* was not based upon either of these two doctrines. Instead, it was based upon our finding that the legislature intended to vest *"exclusive* primary jurisdiction over arbitration disputes" with the Board. (Emphasis added.) (123 Ill. 2d at 224.) The doctrine of primary jurisdiction, on the other hand, only applies where a court has either *original* or *concurrent* jurisdiction over the dispute. (*People ex rel. Fahner v. American Telephone & Telegraph Co.* (1981), 86 Ill. 2d 479, 485-86.) Accordingly, the doctrine of primary jurisdiction was irrelevant to our decision in *Compton* and, along with the doctrine's exceptions, is irrelevant in this case.

Unlike the doctrine of primary jurisdiction, the exhaustion of remedies doctrine can apply where an agency is vested with exclusive jurisdiction. (*People ex rel. Fahner,* 86 Ill. 2d at 485.) Thus, even though the exhaustion of remedies doctrine did not enter into our decision in *Compton,* the doctrine may be relevant to our determination in this case. In particular, the exception to the exhaustion doctrine which allows a circuit court to hear a challenge to an agency's jurisdiction was applicable here. As we explained in *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 550-51:

> "The purposes for the exhaustion requirement are not served where an administrative assertion of authority to hear or determine certain matters is attacked on its face on the grounds that the assertion of jurisdiction is not authorized by statute. *** Where an agency's statutory au-

thority to promulgate a rule and exercise jurisdiction is in issue, no questions of fact are involved. The agency's particular expertise is not implicated in statutory construction. Further, there is virtually no chance the aggrieved party will succeed before an agency where the issue is the agency's own assertion of authority."

The School District was therefore not precluded by the exhaustion of remedies doctrine from challenging the Board's jurisdiction. However, as we explain below, based upon our reasoning in *Compton*, we conclude that the circuit court was incorrect in its determination that the Act did not divest the circuit courts of jurisdiction to determine the arbitrability of grievances in the context of public educational labor relations.

Just as the Act does not provide for circuit court jurisdiction over arbitration awards (*Compton*, 123 Ill. 2d at 221), it also does not provide for circuit court jurisdiction over actions to declare matters inarbitrable or to enjoin arbitration. Similarly, the Illinois Public Labor Relations Act, unlike the Act here in question, explicitly provides that "[t]he grievance and arbitration provisions of any collective bargaining agreement shall be subject to the Illinois 'Uniform Arbitration Act' [Ill. Rev. Stat. 1987, ch. 10, par. 101 *et seq.*]." (Ill. Rev. Stat. 1987, ch. 48, par. 1608.) Under the Uniform Arbitration Act, the question of whether a dispute clearly falls within the scope of an arbitration agreement is to be resolved by the circuit courts (*Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 449), and the circuit courts are explicitly granted the power to compel or stay arbitrations. (Ill. Rev. Stat. 1987, ch. 10, par. 102.) Following our reasoning in *Compton*, "[t]he absence of any reference to the Uniform Arbitration Act in the Illinois Educational Labor Relations Act strongly suggests that the legislature did not intend" the circuit courts to determine arbitrability or to enjoin arbitra-

tions. (*Compton*, 123 Ill. 2d at 222.) Instead, the circuit courts' only roles under the Act are to enforce Board-issued subpoenas (Ill. Rev. Stat. 1987, ch. 48, par. 1705), to enjoin or prevent strikes by educational employees where such strikes pose a danger to the public health or safety (Ill. Rev. Stat. 1987, ch. 48, par. 1713), and to enforce Board orders during and after unfair labor practice hearings (Ill. Rev. Stat. 1987, ch. 48, pars. 1715, 1716).

To allow the parties in school labor disputes to freely seek circuit court intervention would disrupt the statutory scheme. In fact, the dangers of such intervention are apparent in this case. Conflicts like the unseemly tug-of-war between the Board and the circuit court for jurisdiction over this dispute, culminating in a final injunction against the Board proceeding, cannot and should not be encouraged.

An *amicus*, the Board of Trustees of Community College District No. 508, has raised an additional argument which was not raised by the parties in *Compton* but which, if accepted, would require us to overrule *Compton*. *Amicus* argues that divesting the circuit courts of jurisdiction would violate article VI, sections 1 and 9, of our constitution, which vests the circuit courts with "judicial power" to decide all "justiciable matters." (Ill. Const. 1970, art. VI, §§1, 9.) *Amicus* is correct as to the general proposition that article VI, sections 1 and 9, prevents the legislature from arbitrarily stripping the circuit courts of jurisdiction over matters traditionally within their purview. There is, however, an exception.

Where the legislature enacts a comprehensive statutory scheme, creating rights and duties which have no counterpart in common law or equity, the legislature may define the "justiciable matter" in such a way as to preclude or limit the jurisdiction of the circuit courts. (*DeKing v. Urban Investment & Development Co.* (1987), 155 Ill. App. 3d 594, 596-97; *Skilling v. Skilling* (1986),

104 Ill. App. 3d 213, 219.) While this principle has only been clearly enunciated in appellate court cases, it has been implicit in this court's holdings in such cases as *Mein v. Masonite Corp.* (1985), 109 Ill. 2d 1, 6-7 (circuit courts have no original jurisdiction to hear claims of discrimination under the Illinois Human Rights Act), and *Gunnels v. Industrial Comm'n* (1964), 30 Ill. 2d 181, 185 (circuit courts have no original jurisdiction over workers' compensation proceedings). As we pointed out in *Compton*, the Illinois Educational Labor Relations Act "revolutionizes Illinois school labor law." (*Compton*, 123 Ill. 2d at 219.) It creates rights and duties which were unknown to the common law. It creates, for example, a limited right to strike. More pertinently, it imposes upon both parties to an educational collective-bargaining agreement the duty to include within that agreement provisions for grievance resolution procedures and for binding arbitration of disputes. It also makes refusal to comply with binding arbitration an unfair labor practice. (123 Ill. 2d at 218-19.) These are all duties without common law counterparts. In creating these rights and duties, the legislature was free to limit the circuit courts' jurisdiction over arbitration matters to the extent necessary to prevent conflict between the circuit courts and the Board. In our opinion, that is precisely what this legislation does.

We therefore conclude that the circuit court lacked jurisdiction to enjoin arbitration and to decide questions of arbitrability. Because of our conclusion that the Board, and not the circuit court, has exclusive jurisdiction to decide questions of arbitrability, we need not address whether the School District's dismissal of Ms. Frank involved a nondelegable duty under the School Code was a matter of inherent managerial control, or was for any other reason inarbitrable. (See *Compton*, 123 Ill. 2d at 226.) Under the statutory scheme estab-

lished by the General Assembly, that question has been left for the Board to decide in the first instance, with review available in the appellate court. (Ill. Rev. Stat. 1987, ch. 48, par. 1716.) Accordingly, the circuit court's injunctions prohibiting the Union from proceeding with arbitration, prohibiting the Board from proceeding with its hearing on the unfair labor practice complaint against the School District, and the court's finding that the School District's dismissal of Ms. Frank was inarbitrable are reversed.

For the foregoing reasons, the judgments of the circuit and appellate courts are reversed, and the cause is remanded to the circuit court of Lake County with directions to dismiss the complaint for lack of jurisdiction.

*Nos. 66361, 66964 — Judgments reversed;*
*cause remanded with directions.*
*Nos. 66981, 67050 — Judgment reversed;*
*cause remanded with directions.*

JUSTICE WARD took no part in the consideration or decision of this case.