# ILLINOIS OFFICIAL REPORTS

## Supreme Court

*Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611

| | |
|---|---|
| Caption in Supreme Court: | CROSSROADS FORD TRUCK SALES, INC., Appellant, v. STERLING TRUCK CORPORATION *et al.*, Appellees. |
| Docket No. | 111611 |
| Filed | December 1, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An automotive dealer complaining of franchise termination without good cause, in violation of statute, must present the issue first to the Motor Vehicle Review Board; if the Board finds no good cause, there is then subject matter jurisdiction in the circuit court, and damages may be sought there. |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Sangamon County, the Hon. Patrick W. Kelley, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Gary L. Smith, of Loewenstein, Hagen & Smith, P.C., of Springfield, for appellant.

Martin J. Bishop and Jonathan W. Garlough, of Foley & Lardner LLP, of Chicago, and Jon P. Christiansen, of Milwaukee, Wisconsin, for appellees.

Dennis M. O'Keefe, of Lake Forest, for *amicus curiae* Chicago Automobile Trade Association.

Lawrence R. Doll, of Springfield, for *amicus curiae* Illinois Automobile Dealers Association.

Justices

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Crossroads Ford Truck Sales, Inc., filed a 14-count second amended complaint against defendants Sterling Truck Corporation, Daimler Trucks North America, LLC, and Chris Patterson. The claims alleged various violations of the Motor Vehicle Franchise Act (Act) (815 ILCS 710/1 *et seq.* (West 2010)) and claims of breach of contract, tortious interference with contract, and fraud. The circuit court of Sangamon County dismissed with prejudice all but two of the counts in plaintiff's second amended complaint pursuant to defendants' motion to dismiss.

¶ 2    On appeal, the appellate court affirmed the decision of the circuit court. 406 Ill. App. 3d 325. The appellate court also held that the circuit court lacked subject matter jurisdiction to hear several counts and portions of counts brought under section 4(d)(6) of the Act, because those counts should have been brought before the Motor Vehicle Review Board (MVRB). 406 Ill. App. 3d at 335. Plaintiff filed a petition for leave to appeal pursuant to Supreme Court Rule 315 (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)), which we allowed. We also allowed the Illinois Automobile Dealers Association to file a brief as *amicus curiae* pursuant to Supreme Court Rule 345. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 3    For the reasons that follow, we affirm the judgment of the appellate court.

## BACKGROUND

### Factual History

¶ 6    Defendant Daimler Trucks is a wholly owned subsidiary of Daimler AG. Daimler Trucks is the largest heavy duty truck manufacturer in North America. Defendant Sterling Truck Corporation is a subsidiary of Daimler Trucks and manufactures the Sterling line of trucks. Defendant Chris Patterson is the chief executive officer of Daimler Trucks and president of Sterling. Plaintiff is a motor vehicle dealer and has held a Sterling truck franchise since 1998. Defendant Sterling and plaintiff are parties to a Sales and Service Agreement (SSA) which grants plaintiff the right to purchase from Sterling products such as Sterling trucks and parts. Plaintiff can also service Sterling vehicles.

¶ 7    On October 14, 2008, Patterson notified all Sterling dealers, including plaintiff, that Daimler Trucks was discontinuing the Sterling line of trucks to focus on a "two brand strategy," with March 26, 2009, as the last day of production, and January 15, 2009, as the last day for accepting dealer orders. The letter offered plaintiff the opportunity to continue on as a Sterling service dealership under a new service dealer agreement, which would replace the SSA. Plaintiff was to receive official notice of termination of its SSA in the coming weeks. Plaintiff was warned that, following the termination of the SSA, if it did not sign the general release and agree to terminate its Sterling franchise, Daimler Trucks would not renew plaintiff's Detroit Diesel Direct Dealer Agreement after December 31, 2008.[1]

¶ 8    Also on October 14, 2008, Daimler Trucks filed an announcement with the Securities and Exchange Commission announcing the discontinuation of the Sterling truck brand effective March 2009 and that additions would be made to the Freightliner and Western Star product lines to address market segments that had been served exclusively by the Sterling line. On November 24, 2008, Daimler Trucks sent plaintiff a letter giving notice that Sterling Trucks was exercising its rights pursuant to the SSA to discontinue the manufacture of Sterling vehicles. The letter again offered plaintiff the opportunity to transition to a new service agreement, but if it elected not to, the old SSA would remain in effect. The letter stated that it "did not constitute notice of termination or modification" of the SSA, because plaintiff could elect to continue operating under the current SSA. The letter stated Daimler Trucks did not believe formal notice was required under Illinois's dealer laws, but if plaintiff felt otherwise, plaintiff was to "consider this that [formal] notice." On April 10, 2009, Daimler Trucks terminated plaintiff's Detroit Diesel Direct Dealer Agreement by written notice, which plaintiff alleges prevented it from obtaining Detroit Diesel parts at wholesale and performing warranty work on trucks with Detroit Diesel engines.

---

[1]Detroit Diesel manufactures engines and parts used in Sterling trucks (and other Daimler Trucks brands such as Freightliner and Western Star). Daimler Trucks is affiliated with Detroit Diesel and controlled the renewal or termination of the Detroit Diesel Direct Dealer Agreement with plaintiff. That agreement allowed plaintiff to obtain parts at wholesale and perform warranty work on Detroit Diesel engines.

¶ 9                           Procedural History

¶ 10           *Plaintiff's Complaint to the Motor Vehicle Review Board*

¶ 11        On November 12, 2008, plaintiff filed a "Notice of Protest" with the MVRB, alleging that Patterson's letter of October 14, 2008, "effectively terminated the SSA between Sterling Trucks and Crossroads." Plaintiff alleges, among other claims, that this was done without good cause in violation of section 4(d)(6) of the Act, which requires a manufacturer to have good cause when terminating a franchise agreement. Plaintiff sought the award of fair market value damages for its franchise prior to the time defendants made the decision to terminate. In the alternative, plaintiff requested that the MVRB prohibit defendants from terminating the franchise, require defendants to purchase plaintiff's existing stock inventory and parts inventory at cost, compensate plaintiff for the loss of investment in Sterling products and inventory, and require defendants to reimburse plaintiff for attorney fees and costs. Plaintiff voluntarily dismissed its protest without prejudice on February 3, 2009.

¶ 12                        *Circuit Court Proceedings*

¶ 13        Plaintiff initiated legal action with the filing of its complaint in the circuit court of Sangamon County on February 26, 2009. A 14-count second amended complaint, which is the complaint at issue in this opinion, was filed in the circuit court on October 20, 2009. Plaintiff alleged that defendants committed various torts and violations of the Act. Count I was directed against Sterling Truck and alleged that the notice of termination or nonrenewal of plaintiff's franchise violated: section 4(b) of the Act, in that it was done in bad faith; section 4(d)(6), in that Sterling caused the termination or nonrenewal without good cause as defined by the Act; section 4(d)(1), in that Sterling arbitrarily and capriciously modified the previously existing plan of allocation of new Sterling trucks to plaintiff; section 4(d)(6)(A), in that Sterling without good cause failed to provide plaintiff with statutory notice of termination or nonrenewal; and section 9, in that, without good cause, Sterling terminated the franchise without paying fair and reasonable compensation to plaintiff for the value of plaintiff's business and franchise. Plaintiff sought damages in excess of $50,000 for the violations contained in count I.

¶ 14        Count II repeated the same allegations for violations of the Act against Daimler Trucks and also asked for $50,000 in damages. Count III essentially repeated those charges against Patterson. Count IV was directed against Daimler Trucks under section 4(b) of the Act, in that Daimler, arbitrarily and in bad faith, intentionally required plaintiff to invest in Sterling products at a time when Daimler knew it planned to discontinue manufacture of new Sterling-type trucks under the Sterling brand. Plaintiff sought in excess of $50,000 in damages. Count V alleged that Daimler tortiously interfered with plaintiff's business relationship with Sterling causing Sterling to breach the franchise contract by terminating the franchise without good cause in violation of section 4(d)(6). Plaintiff sought in excess of $50,000 in damages.

¶ 15        Count VI alleged that Daimler violated sections 4(d)(6), 4(b), and 4(d)(4) of the Act as a result of its termination or nonrenewal of plaintiff's Detroit Diesel Direct Dealer Agreement. Plaintiff sought damages in an unspecified amount for the loss of the Detroit

Diesel Direct Dealer Agreement. Count VII alleged that Sterling's discontinuation of new Sterling vehicles available to plaintiff under the SSA disqualified the SSA as a franchise under section 2(i) of the Act and amounted to a termination of the franchise without good cause. Plaintiff sought in excess of $50,000 in damages. Counts VIII and IX against Sterling and Daimler, respectively, alleged that the proposal by defendants to extend the termination date of the SSA to December 31, 2012, represented an offer to substantially change or modify the obligations of the SSA in violation of sections 4(d)(6), 4(d)(6)(B), and 9 of the Act. Damages in excess of $50,000 were sought in both counts.

¶ 16    Count X alleged that Sterling violated the new version of section 4(d)(6)(D)[2] (effective May 22, 2009) when Sterling discontinued the Sterling line. Because Sterling has discontinued the line, plaintiff will not be able to sell any new Sterling trucks, as it had sold all the remaining Sterling trucks it had in stock. Plaintiff claims this essentially terminates the franchise without good cause. Plaintiff alleged further violations of sections 4(d)(6), 4(b), 4(d)(1), 4(d)(6)(A), and 9 of the Act and sought in excess of $50,000 in damages. Count XI alleged similar claims against Daimler.

¶ 17    Count XII alleged in the alternative that, even if the franchise was terminated with good cause, it was in violation of amended section 9.5 of the Act, in that Sterling will actually terminate or fail to renew plaintiff's franchise on terms equally available to other dealers without paying fair and reasonable compensation to plaintiff for the value of plaintiff's franchise and business. Count XIII alleged similar claims against Daimler. Both counts sought in excess of $50,000 in damages. Count XIV alleged that Daimler violated section 6 of the Act by terminating the Detroit Diesel Direct Dealer Agreement that prohibited plaintiff from purchasing Detroit Diesel parts necessary to fulfill Sterling warranty requirements. The nonrenewal was without any valid business reason and was designed to economically punish plaintiff in retaliation for plaintiff's refusal to sign the transition bonus program and general release.

¶ 18    On December 1, 2009, defendants filed a motion to dismiss plaintiff's second amended complaint for, *inter alia*, failure to state a claim pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)). On February 19, 2010, the trial court entered its order dismissing counts I through V and VII through XIII with prejudice and entering judgment in favor of defendants on those counts. The court found that, with regard to counts I, II, VIII, and IX, even if plaintiff adequately alleged an actual or constructive termination of contract by defendants, such termination would be with good cause under section 4(d)(6)(D). The court found the term "line make" in section 4(d)(6)(D) referred to brand name and not vehicle type; thus discontinuance of manufacture and rebranding would be good cause for terminating the contract. Count IV was dismissed because plaintiff alleged no facts showing an affirmative misrepresentation on the part of defendants, nor did plaintiff

---

[2]The new version of section 4(d)(6)(D) repealed the following language: "Good cause shall exist to cancel, terminate or fail to offer a renewal or replacement franchise or selling agreement to all franchisees of a line make if the manufacturer permanently discontinues the manufacture or assembly of motor vehicles of such line make." 815 ILCS 710/4(d)(6)(D) (West 2008) (repealed by Pub. Act 96-11, § 5 (eff. May 22, 2009)).

plead the existence of a fiduciary relationship with defendant. Count V was dismissed because both the contract and Act permit Sterling to cease manufacturing trucks, even if the trucks were to be rebranded under another company owned by Daimler. Counts X, XI, XII, and XIII were dismissed because plaintiff failed to state a claim upon which relief could be granted. The court had previously dismissed counts III and VII with prejudice, and those dismissals were allowed to stand. The court denied the motion to dismiss with respect to counts VI and XIV, since plaintiff had shown Daimler had a direct interest in the Detroit Diesel contract, and thus it was covered by section 8 of the Act. The trial court allowed plaintiff to file an interlocutory appeal pursuant to Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)).

¶ 19                                   *Appellate Court Ruling*

¶ 20        On appeal, defendants argued that the trial court did not have subject matter jurisdiction over the claims brought under section 4(d)(6) of the Act. 406 Ill. App. 3d at 333. The appellate court agreed, adopting the dissent in *Clark Investments, Inc. v. Airstream, Inc.*, 399 Ill. App. 3d 209, 215 (2010) (Holdridge, P.J., dissenting), that circuit courts do not have subject matter jurisdiction over claims brought under section 4(d)(6) of the Act. 406 Ill. App. 3d at 335. Rather, "[i]ssues as to whether good cause existed to cancel or terminate a franchise or the refusal to extend the franchise are matters best left to the arbitrator or the Review Board under section 12(d) of the Franchise Act [citation] and not the judiciary." 406 Ill. App. 3d at 335. The appellate court then affirmed the judgment of the trial court dismissing the other non-section 4(d)(6) claims pursuant to defendants' section 2-615 motion to dismiss. 406 Ill. App. 3d at 340.

¶ 21                                          ANALYSIS

¶ 22        On appeal to this court, plaintiff argues the appellate court erred in concluding the trial court lacked subject matter jurisdiction to hear claims for damages brought under section 4(d)(6) of the Act. Plaintiff also argues that the trial court erred in dismissing, with prejudice, counts I through V and VII through XIII of its second amended complaint.

¶ 23                               I. Subject Matter Jurisdiction

¶ 24        Plaintiff claims that the circuit court has subject matter jurisdiction to hear claims under section 4(d)(6). In the alternative, plaintiff argues that, under the doctrine of primary jurisdiction, a section 4(d)(6) damages claim may be brought originally in circuit court, and then the good-cause determination may be referred or "farmed out" to the MVRB. Once the good-cause determination is made, the case would be referred back to the circuit court for dismissal or calculation of damages, as appropriate. Defendants argue that the proper method is the two-step approach adopted by the appellate court below: a section 4(d)(6) claim, no matter what relief is sought, must be brought first to the MVRB. Then, if no good cause is found, a damages claim may be brought in the circuit court. Plaintiff argues this approach conflicts with principles of *res judicata*.

¶ 25    If we agree with defendants that the circuit court does not have subject matter jurisdiction to rule on good-cause questions under section 4(d)(6), we must then determine the proper approach for handling a claim under section 4(d)(6) that seeks damages: (1) find the circuit court has primary jurisdiction, *e.g.*, allow a section 4(d)(6) damages claim to be brought originally in circuit court, which will then refer the good-cause determination to the MVRB, while retaining jurisdiction of the case, or (2) adopt the approach advocated below, where a section 4(d)(6) claim must be brought originally in the MVRB to determine good cause, and if no good cause is found, a claim may then be filed with the circuit court for damages arising out of the section 4(d)(6) claim.

¶ 26    Whether the circuit court had subject matter jurisdiction to entertain a claim under section 4(d)(6) of the Act that seeks damages is a question of law and will be reviewed *de novo*. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 294 (2010) ("An argument challenging the subject matter jurisdiction of the circuit court presents a question of law that this court will review *de novo*."); *Blount v. Stroud*, 232 Ill. 2d 302, 308 (2009).

¶ 27    "Subject matter jurisdiction refers to the court's power 'to hear and determine cases of the general class to which the proceeding in question belongs.' " *In re M.W.*, 232 Ill. 2d 408, 415 (2009) (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002)). Under the Illinois Constitution of 1970, the circuit courts have original jurisdiction of all justiciable matters except where this court has exclusive and original jurisdiction relating to the redistricting of the General Assembly and the ability of the Governor to serve or resume office. Ill. Const. 1970, art. VI, § 9; *In re Luis R.*, 239 Ill. 2d 295, 301 (2010). The legislature may divest the circuit courts of their original jurisdiction through a comprehensive statutory administrative scheme, but it must do so explicitly. *Employers Mutual Cos. v. Skilling*, 163 Ill. 2d 284, 287 (1994). Statutory interpretation is necessary to determine if the legislature intended to divest the circuit court of subject matter jurisdiction.

¶ 28    The jurisdictional question must be answered in the context of the relevant provisions of the Franchise Act. See *In re M.W.*, 232 Ill. 2d at 415. The Act is "designed to protect existing dealers and consumers from the negative impact of aggressive franchising practices by automobile manufacturers whose desires to establish excessive competing franchises are considered to be a potential threat to the public welfare." *General Motors Corp. v. State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 7 (2007).

¶ 29    The need for an administrative agency to address certain claims under the Act arose after this court, in *Fields Jeep-Eagle, Inc. v. Chrysler Corp.*, 163 Ill. 2d 462 (1994), found that provisions of the Act impermissibly delegated, for judicial examination, matters which are for legislative or administrative determination and, thus, violated the doctrine of separation of powers. *Fields* determined that a portion of the Act, specifically section 4(e)(8), which prohibited manufacturers from granting a new franchise in an area that already had an existing franchise, violated the separation of powers clause because it required the circuit courts to determine "good cause," and part of that determination included deciding whether the proposed dealership would be in the public interest and welfare. *Fields*, 163 Ill. 2d at 480. The court found this type of determination was a function circuit courts were not equipped to perform. The power to determine the "public interest" was vested in the legislature and

could not be delegated to the judiciary. *Fields*, 163 Ill. 2d at 478-79. The court concluded that "this impermissible delegation violate[d] the separation of powers clause of the Illinois Constitution" and was "unconstitutional." *Fields*, 163 Ill. 2d at 479. As a result of this court's decision in *Fields*, the legislature amended the Act to create the Motor Vehicle Review Board (MVRB) to hear dealer protests under the Act. *General Motors Corp*., 224 Ill. 2d at 26.

¶ 30    In the present case, the Franchise Act provisions at issue concern the manufacturer's ability to cancel or terminate a dealer's franchise agreement without good cause. Section 4(d)(6) of the Act deems it a violation for a manufacturer:

> "to cancel or terminate the franchise or selling agreement of a motor vehicle dealer without good cause and without giving notice as hereinafter provided; to fail or refuse to extend the franchise or selling agreement of a motor vehicle dealer upon its expiration without good cause and without giving notice as hereinafter provided; or, to offer a renewal, replacement or succeeding franchise or selling agreement containing terms and provisions the effect of which is to substantially change or modify the sales and service obligations or capital requirements of the motor vehicle dealer arbitrarily and without good cause and without giving notice as hereinafter provided notwithstanding any term or provision of a franchise or selling agreement." 815 ILCS 710/4(d)(6) (West 2010).

¶ 31    If a manufacturer intends to terminate, not renew, or substantially change or modify a franchise agreement, it must send a letter to the dealer at least 60 days before the effective date of the proposed action, or not later than 10 days before the proposed action. The letter must include a detailed statement setting forth the specific grounds for the proposed action and shall state that the dealer has only 30 days from the receipt of the notice to file with the MVRB a written protest against the proposed action. 815 ILCS 710/4(d)(6)(A), (d)(6)(B) (West 2010). Within 30 days from receipt of the notice, the dealer may file a written protest against the proposed action with the MVRB, at which time the MVRB shall enter an order fixing a date, within 60 days of the date of the order, time, and place of a hearing of the protest. 815 ILCS 710/4(d)(6)(C) (West 2010). At the hearing, the manufacturer shall have the burden of proof to establish that good cause existed to terminate, fail to renew, or substantially change or modify the agreement. The determination of whether good cause exists "shall be made by the Board under subsection (d) of Section 12 of this Act." 815 ILCS 710/4(d)(6)(C) (West 2010).

¶ 32    Section 12(d) states:

> "In proceedings under subsection (a) or (b), when determining whether good cause has been established for cancelling, terminating, refusing to extend or renew, or changing or modifying the obligations of the motor vehicle dealer as a condition to offering a renewal, replacement, or succeeding franchise or selling agreement, the arbitrators or Board shall consider all relevant circumstances in accordance with subsection (v) of Section 2 of this Act, including but not limited to:
>
>> (1) The amount of retail sales transacted by the franchisee during a 5-year period immediately before the date of the notice of proposed action as compared

-8-

to the business available to the franchisee.

(2) The investment necessarily made and obligations incurred by the franchisee to perform its part of the franchise.

(3) The permanency of the franchisee's investment.

(4) Whether it is injurious to the public interest for the franchise to be cancelled or terminated or not extended or modified, or the business of the franchise disrupted.

(5) Whether the franchisee has adequate motor vehicle sales and service facilities, equipment, vehicle parts, and service personnel to reasonably provide for the need of the customers for the same line make of motor vehicles handled by the franchisee.

(6) Whether the franchisee fails to fulfill the warranty obligations of the manufacturer required to be performed by the franchisee.

(7) The extent and materiality of the franchisee's failure to comply with the terms of the franchise and the reasonableness and fairness of those terms.

(8) Whether the owners of the franchise had actual knowledge of the facts and circumstances upon which cancellation or termination, failure to extend or renew, or changing or modification of the obligations of the franchisee as a condition to offering a renewal, replacement, or succeeding franchise or selling agreement." 815 ILCS 710/12(d) (West 2010).

¶ 33    Section 2(v), referred to in section 12(d), defines "good cause" as "facts establishing commercial reasonableness in lawful or privileged competition and business practices as defined at common law." 815 ILCS 710/2(v) (West 2010).

¶ 34    Remedies under the Act are discussed in section 13, which provides that "[a]ny franchisee or motor vehicle dealer who suffers any loss of money or property, real or personal, as a result of the use or employment by a manufacturer *** of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by this Act, or any action in violation of this Act, may bring an action for damages and equitable relief, including injunctive relief, in the circuit court of the county in which the objecting franchisee has its principal place of business or, if the parties have so agreed, in arbitration." 815 ILCS 710/13 (West 2010).

¶ 35        1. Original Jurisdiction to Determine Good Cause Under Section 4(d)(6)

¶ 36    The first argument advanced by plaintiff is that the circuit court has jurisdiction to determine good cause under section 4(d)(6) of the Act. In support of this argument, plaintiff points to the existence of section 2(v), which it believes provides a competing definition for good cause with section 12(d). Unlike section 12(d), which gives explicit authority to the MVRB to determine good cause using the enumerated factors, section 2(v), plaintiff argues, is a definition the circuit court may use to make its own good-cause determination without employing the section 12(d) factors, such as the public interest, that this court found to be the province of the legislature in *Fields*. Plaintiff argues "[t]hat good cause standard is

distinct from the good cause of commercial reasonableness in Sec. 2(v) that can be used in the circuit court where the dealer can seek damages for a loss of property or money as a result of a violation of the [Act]."

¶ 37    Reading the statute as a whole, along with this court's prior opinion in *Fields*, it is clear that the legislature intended for good-cause determinations under section 4(d)(6) to be made exclusively by the MVRB. Sections 4(d)(6)(A) and 4(d)(6)(B) refer to the necessity of the manufacturer sending the dealer written notice of its proposed actions within 60 days before the expiration of the franchise agreement. 815 ILCS 710/4(d)(6)(A), (d)(6)(B) (West 2010). The notices need to be detailed and "shall state that the dealer has only 30 days from receipt of the notice to file with the Motor Vehicle Review Board a written protest against the proposed action." 815 ILCS 710/4(d)(6)(A) (West 2010). Section 4(d)(6)(C) prescribes the correct procedure for a dealer protest to a proposed manufacturer action. The dealer "may file with the Board a written protest against the proposed action." 815 ILCS 710/4(d)(6)(C) (West 2010). When the protest is filed, the MVRB "shall" enter an order fixing date, time and place of hearing as required by sections 12 and 29 of the MVFA. 815 ILCS 710/4(d)(6)(C) (West 2010). The manufacturer has the burden of proof at the hearing to "establish that good cause exists to cancel or terminate" the agreement. 815 ILCS 710/4(d)(6)(C) (West 2010). The determination of good cause "shall be made by the Board under subsection (d) of section 12 of this Act." Nowhere in section 4(d)(6) does the statute mention filing any sort of claim with the circuit court. Section 12(e) specifically allows for claims other than those under section 4(d)(6) (among other provisions) to be brought in the circuit court, the implication being section 4(d)(6) claims are properly brought in the MVRB.

¶ 38    The legislature, after *Fields*, amended the statute to create the MVRB and enumerate what factors the MVRB could use in determining good cause (such as the public interest). It did not intend for circuit courts to determine good cause under section 4(d)(6) based on the definition provided in section 2(v). *Fields* held that good-cause determinations under section 4(e)(8)[3] that took into account such factors as the public interest could not be made by the courts without violating separation of powers. Further, section 12(e) allows a dispute arising from a section *other* than section 4(d)(6) or 4(e)(8) that seeks a "remedy other than damages" to be commenced in the circuit court. 815 ILCS 710/12(e) (West 2010). Clearly, the legislature views sections 4(d)(6) and 4(e)(8) to be similar in nature. Just as *Fields* prohibited a circuit court from determining good cause under section 4(e)(8), a circuit court may not determine good cause in conjunction with section 4(d)(6). Good cause under section 4(d)(6) must be determined by the MVRB.

¶ 39    Further, another problem with plaintiff's approach is that it would lead to inconsistent results and the application of different standards. A manufacturer would be unable to predict the consequences of its conduct, because a circuit court and the MVRB may reach different conclusions on whether a manufacturer acted with good cause based on the different

_____

[3]While section 4(d)(6) deals with the termination, nonrenewal, or modification of a dealer's franchise by a manufacturer, section 4(e)(8) concerns the placement, by a manufacturer, of a new franchise near an existing franchise.

standards employed. The MVRB would have to use the section 12(d) factors, and the circuit court would be free to disregard those standards and employ its own definition of good cause or the definition articulated in section 2(v). The dealer would have all the power to choose the forum it thought gave it the best chance of success. The legislature could not have intended such a result.

¶ 40         *2. Primary Jurisdiction When Section 4(d)(6) Claims Involve Damages*

¶ 41         Plaintiff's next argument, and the main issue in this appeal, concerns whether a section 4(d)(6) claim that seeks damages can be brought in the circuit court pursuant to the doctrine of primary jurisdiction. While it is clear that section 4(d)(6) claims must originally be brought in the MVRB, section 13 allows for a dealer to bring a claim for damages in the circuit court. Thus, if there is a claim under section 4(d)(6) that also seeks damages, it would appear the different sections of the statute are at odds with one another. The two provisions must be reconciled to resolve the tension between them. The question, then, is what is the best way to do so under the Act, keeping in mind the constitutional separation of powers issue addressed by this court in *Fields*. Further, if the legislature meant to deprive the circuit courts of original jurisdiction over such claims, it needed to do so explicitly.

¶ 42         The proper solution, argues plaintiff, is the doctrine of primary jurisdiction, whereby the claim must be brought originally in the circuit court and can then be "referred out" to the MVRB for a determination of good cause. If good cause is not found for the termination, the case is returned to the circuit court, which had retained jurisdiction, to determine damages. Defendants counter that the proper procedure is the two-step process advocated by the appellate court below, where a section 4(d)(6) claim is brought originally in the MVRB and, if the MVRB rules in favor of the dealer, the dealer may then seek damages in the circuit court pursuant to section 13.

¶ 43         Under the doctrine of primary jurisdiction, when a court has jurisdiction over a matter, it should, on some occasions, stay the judicial proceedings pending referral of the controversy, or a portion of it, to an administrative agency having expertise in the area. *People v. NL Industries*, 152 Ill. 2d 82, 95 (1992). "The doctrine of primary jurisdiction is ' "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." ' " *Skilling*, 163 Ill. 2d at 288 (quoting *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 444 (1986), quoting *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 63 (1956)). Under primary jurisdiction, a matter should be referred to an administrative agency when it has a specialized or technical expertise that would help resolve the controversy, or where there is need for uniform administrative standards. *Skilling*, 163 Ill. 2d at 288-89.

¶ 44         For the primary jurisdiction doctrine to be applicable, the circuit court must have original or concurrent jurisdiction over the subject matter of the dispute. *NL Industries*, 152 Ill. 2d at 95; *Skilling*, 163 Ill. 2d at 288. Again, while the circuit courts have original jurisdiction over all justiciable matters, the legislature may vest exclusive original jurisdiction in an administrative agency. *Skilling*, 163 Ill. 2d at 287. However, if the legislature chooses to divest the circuit courts of original jurisdiction, it must do so explicitly. *Skilling*, 163 Ill. 2d

at 287. We must turn to the statute and employ the tools of statutory interpretation to determine if the legislature intended to divest the circuit courts of jurisdiction to hear section 4(d)(6) claims that seek damages.

¶ 45   "All provisions of a statutory enactment are viewed as a whole." *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003). Words and phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation. *Cryns*, 203 Ill. 2d at 279-80. To determine the legislature's intent, the court may properly consider not just the statute's language, but also the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved. *Cryns*, 203 Ill. 2d at 280. The intent of the legislature " 'can be ascertained from a consideration of the entire Act, its nature, its object and the consequences that would result from construing it one way or the other.' " *Cryns*, 203 Ill. 2d at 280 (quoting *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96 (1990)).

¶ 46   Here, the statute is silent as to whether the MVRB has exclusive jurisdiction to hear section 4(d)(6) claims involving damages. We are aware of the requirement that the legislature must explicitly divest a circuit court of jurisdiction on a justiciable matter. However, because the statute in question was amended by the legislature in direct response to this court's ruling in *Fields*, we find that the legislature clearly intended to divest the circuit court of jurisdiction.

¶ 47   Plaintiff's proposal of primary jurisdiction does not pass constitutional muster. For the circuit court to have and retain primary jurisdiction over the claim, it must first have original or concurrent jurisdiction over the subject matter of the dispute. *NL Industries*, 152 Ill. 2d at 95; *Skilling*, 163 Ill. 2d at 288. This court was clear, however, that determinations of good cause by a circuit court are unconstitutional violations of the separations of powers doctrine. *Fields*, 163 Ill. 2d at 479. Therefore, claims under section 4(d)(6) cannot be brought at any time in the circuit courts. The circuit courts do not have subject matter jurisdiction over those claims, and thus have no original or concurrent jurisdiction to retain while the matter is "farmed out" to the MVRB for the good-cause determination.

¶ 48   Plaintiff argues, and the court recognizes, that to deprive the circuit courts of original jurisdiction and vest it in an administrative agency, the legislature must make such deprivation "explicit." In *NL Industries* this court had to determine whether a circuit court possessed concurrent jurisdiction with Illinois Pollution Control Board over cost-recovery actions under the Illinois Environmental Protection Act. *NL Industries*, 152 Ill. 2d at 96. The court first looked to the statutory language to determine intent, which stated " '[t]he costs and damages provided for in this Section may be imposed by the Board in an action brought before the Board in accordance with Title VIII of this Act ***.' " (Emphases omitted.) *NL Industries*, 152 Ill. 2d at 97 (quoting Ill. Rev. Stat. 1987, ch. 111½, ¶ 1022.2(i)). The court noted that, while it appears that the legislature intended that cost recovery actions *could* be filed before the board, no language in that section explicitly precluded the circuit courts from hearing such cases. Further, later paragraphs in that same section referred to cost-recovery actions filed before the circuit court, leading this court to conclude that such actions may be properly filed there. *NL Industries*, 152 Ill. 2d at 97.

¶ 49   Later amendments to the Illinois Environmental Protection Act also presume that

-12-

jurisdiction is vested in the circuit courts to hear cost recovery, as the amendments refer to orders to pay costs " 'by the Board or a court of competent jurisdiction.' " (Emphasis omitted.) *NL Industries*, 152 Ill. 2d at 98 (quoting Ill. Rev. Stat. 1989, ch. 111½, ¶ 1022.2(m)(5)(C)). After looking at the amendments, reading the statute as a whole, and examining the legislative history, this court concluded the circuit court should be vested with concurrent jurisdiction to hear cost-recovery actions under the Illinois Environmental Protection Act. *NL Industries*, 152 Ill. 2d at 100.

¶ 50    In *Skilling*, this court needed to determine whether, in a workers' compensation claim for injuries suffered on the job, jurisdiction was exclusive with the administrative agency (the Industrial Commission) or if it was concurrent with the circuit court. *Skilling*, 163 Ill. 2d at 286. The statutory section at issue stated that all questions arising under the Workers' Compensation Act that had not been settled by agreement of the parties " 'shall, except as otherwise provided, be determined by the Commission.' " *Skilling*, 163 Ill. 2d at 286 (quoting 820 ILCS 305/18 (West 1992)). Another section stated that any disputed questions of law shall be determined by the Commission. *Skilling*, 163 Ill. 2d at 286. The court concluded that the Act's pronouncement that " '[a]ll questions arising under this Act *** shall *** be determined by the Commission' " was insufficient to divest the circuit courts of jurisdiction. *Skilling*, 163 Ill. 2d at 287 (quoting 820 ILCS 305/18 (West 1992)). Citing to *NL Industries*, this court noted that there the Pollution Control Board and the circuit court had concurrent jurisdiction because no language in the Environmental Protection Act specifically excluded the circuit courts from deciding such cases, and "[s]ince exclusionary language is similarly absent from the Workers' Compensation Act, we reach the same conclusion herein." *Skilling*, 163 Ill. 2d at 287.

¶ 51    The present case is distinguishable from the situations presented in *NL Industries* and *Skilling*. First, unlike in *NL Industries* and *Skilling*, the administrative body here (the MVRB) was created specifically to handle determinations of good cause because this court in *Fields* held that circuit courts were not competent to determine good cause lest they violate the separation of powers principle. This is not simply a situation where the MVRB may have more expertise and time to make good-cause determinations, but rather the circuit court is constitutionally prohibited from doing so via separation of powers.

¶ 52    Further, a full reading of the Act, including the reasons behind the amendments following *Fields*, makes clear that the legislature intended to deprive the circuit courts of jurisdiction to make good cause determinations and thus no concurrent jurisdiction exists. Unlike in *NL Industries*, where the Illinois Environmental Protection Act makes reference to recovery cost claims being brought in the Pollution Control Board or circuit court, nowhere in section 4(d)(6) or 12 of the Franchise Act does the statute speak of claims being brought before the MVRB *or* circuit court. Rather, the only body referred to as a place to bring those claims is the MVRB. The language of section 4(d)(6) claims tracks very closely with the language of section 4(e)(8), which this court in *Fields* held could never be brought in the circuit court.

¶ 53    Primary jurisdiction is not applicable in this case. The circuit court is not authorized to make a good-cause determination. Therefore there is no concurrent jurisdiction, and without concurrent or original jurisdiction, there can be no primary jurisdiction. *NL Industries*, 152 Ill. 2d at 95. A case cannot be brought originally in the circuit court and then referred out by

-13-

that court if that court has no jurisdiction over the subject matter in the first place. See *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504*, 128 Ill. 2d 155, 164 (1989).

¶ 54    The only workable approach is the two-step approach of the appellate court. The dealer may bring a section 4(d)(6) claim in the MVRB, where the Franchise Act has prescribed specific detailed procedures for handling such claims. Then, if no good cause is found for the termination of the dealer's franchise, a claim can be filed in the circuit court for damages. While the legislature could have been more explicit in divesting the circuit court of jurisdiction, under the narrow circumstances here, and considering that the legislature amended the statute after *Fields* to create the MVRB to determine issues such as good cause, it becomes clear, reading the statute as a whole, that the legislature intended this to be a two-step process.

¶ 55    Plaintiff argues that this two-step process runs afoul of the doctrine of *res judicata*. Plaintiff claims that, once a dealer prevails in the MVRB, there is no second cause of action to refile that same claim under section 13 for damages. Plaintiff argues that "[i]f a dealer has the 'option' to file before the court or MVRB as argued by [d]efendants, once a decision is rendered by the Board, the dealer has elected its forum and is precluded from seeking damages that it could have obtained by filing in the circuit court in the first instance." Defendants counter that all *res judicata* would do in the situation where a dealer prevails at the MVRB and proceeds to circuit court on damages is preclude the manufacturer from relitigating the issue of good cause for the termination, as determined by the MVRB.

¶ 56    "Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). This bar extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit. *River Park, Inc.*, 184 Ill. 2d at 302. There are three requirements that must be satisfied for *res judicata* to apply: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of parties, or their privies. *River Park, Inc.*, 184 Ill. 2d at 302. "It is well established that *res judicata* can preclude litigation of causes of action or issues already addressed in an administrative proceeding that is judicial in nature." *Osborne v. Kelly*, 207 Ill. App. 3d 488, 491 (1991).

¶ 57    Plaintiff's argument is without merit. Certainly, *res judicata* can act as a bar to bringing a claim in the circuit court that was properly decided in the MVRB. However, it would not act as a bar to a damages claim in the circuit court resulting from an MVRB finding that a termination lacked good cause under section 4(d)(6). We agree with defendants that all *res judicata* would do is bar the manufacturer from relitigating the issue of good cause for the termination as determined by the MVRB. However, since the MVRB is not empowered to award damages, the issue of damages would not be barred by *res judicata* in a circuit court. Damages would not be decided in the MVRB, and moreover they *could not* be decided in the MVRB hearing. Therefore, *res judicata* would not act as a bar to bringing a damages claim in the circuit court.

¶ 58    Plaintiff cites to *Bagnola v. SmithKline Beecham Clinical Laboratories*, 333 Ill. App. 3d 711 (2002), for its proposition that "the mere fact that the MVRB cannot grant the remedy of damages does not mean that the causes of action are different for *res judicata* purposes." *Bagnola* concerned a police officer who had tested positive for cocaine and been threatened with discharge from the force. The laboratories testing his urine for cocaine destroyed the evidence. An administrative hearing held before the police board of the City of Chicago recommended discharge, rejecting the plaintiff's argument that the charges should be dismissed due to the lab's destruction of evidence. On administrative review, the circuit court, after conducting a hearing on the merits, affirmed the decision of the board. *Bagnola*, 333 Ill. App. 3d at 714-16. At the same time, the plaintiff had filed a separate action in the circuit court over the spoliation of evidence in the administrative proceeding. The circuit court granted summary judgment, finding the claim was barred by *res judicata* because it had already been litigated in the administrative proceeding and subsequent circuit court review. *Bagnola*, 333 Ill. App. 3d at 716-17. On appeal, the appellate court affirmed summary judgment, finding the plaintiff's separate circuit court case was barred by *res judicata* and collateral estoppel. *Bagnola*, 333 Ill. App. 3d at 726.

¶ 59    *Bagnola* is distinguishable from this case. In *Bagnola*, the plaintiff could make his claim for spoliation in either the police board or the circuit court. Nothing in the case indicates the circuit court did not have jurisdiction to hear a spoliation claim. Here, however, this court has determined that a circuit court does not have jurisdiction to entertain a claim under section 4(d)(6) of the Act. If there was concurrent jurisdiction between the MVRB and the circuit court to hear section 4(d)(6) claims, then a dealer would be barred, under *res judicata*, from bringing a subsequent section 4(d)(6) damages claim in the circuit court if he had previously chosen to bring the same claim in the MVRB where damages were not available. In this circumstance, however, where a section 4(d)(6) claim can be brought *only* in the MVRB, and damages awarded *only* in the circuit court, *res judicata* would not bar a subsequent circuit court damages claim where the MVRB had determined no good cause existed to terminate a franchise under section 4(d)(6).

¶ 60    ## II. Circuit Court Dismissal of Remaining Counts Under Section 2-615

¶ 61    In its petition for leave to appeal from the appellate court's judgment, the only issue raised, briefed, or even discussed was the subject matter jurisdiction question relating to claims under section 4(d)(6). Plaintiff did not make any mention of the section 2-615 dismissals. In its brief, plaintiff did not address any failure to include those issues in its petition for leave to appeal. In defendants' response brief, defendants noted that plaintiff's petition solely challenged the subject matter jurisdiction holding of the appellate court and that "no other issues were mentioned in the petition, even in abbreviated form." Defendants argue plaintiff has forfeited all other arguments not raised in the petition. In its reply brief, plaintiff asks this court to reconsider its principle that all issues not presented in the petition are not properly before the court and deemed forfeited. Plaintiff complains that petitions for leave to appeal are limited to 20 pages in length and that limit does not allow petitioners the opportunity to fully develop all issues decided by the appellate court, particularly in multi-issue cases or cases that are complex.

¶ 62 Supreme Court Rule 315(c)(3) states that petitions for leave to appeal shall contain "a statement of the points relied upon in asking the Supreme Court to review the judgment of the Appellate Court." Ill. S. Ct. R. 315(c)(3) (eff. Feb. 26, 2010). The petition must also contain "a short argument (including appropriate authorities) stating why review by the Supreme Court is warranted and why the decision of the Appellate Court should be reversed or modified." Ill. S. Ct. R. 315(c)(5). "A party's failure to raise an issue in its petition for leave to appeal may be deemed a forfeiture of that issue." *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 320 (2008). The fact that a party later raised the issue in its brief does not cure the forfeiture. *Buenz*, 227 Ill. 2d at 321.

¶ 63 In this case, only the issue of subject matter jurisdiction is properly before the court. Nowhere in its petition for leave to appeal did plaintiff present argument concerning the section 2-615 dismissals. While this court does not require a fully developed argument in a petition for leave to appeal, a party must raise an argument with sufficient grounds to show there is an issue. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007). Plaintiff's only response to the forfeiture issue, in its reply brief and oral argument, was to complain about the 20-page limitation on petitions for leave to appeal. Therefore, we see no reason to excuse plaintiff's forfeiture of its arguments concerning the section 2-615 dismissal of counts I through V and VII through XIII in its second amended complaint. We find those arguments forfeited and thus they need not be addressed.

¶ 64                                                  CONCLUSION

¶ 65 A claim seeking damages under section 4(d)(6) of the Franchise Act must be brought originally in the MVRB. The circuit court does not have subject matter jurisdiction over such a claim. If a dealer/franchisee seeks damages, the dealer/franchisee may then bring a damages claim in the circuit court if the MVRB determines no good cause existed to terminate the franchise agreement. Plaintiff's remaining claims concerning the circuit court's dismissal of counts I through V and VII through XIII pursuant to section 2-615 of the Code of Civil Procedure are forfeited, as they were not raised in plaintiff's petition for leave to appeal. We, therefore, affirm the judgment of the appellate court.

¶ 66 Affirmed.